## FOGLE v. PULLMAN STANDARD CAR MANUFACTURING COMPANY.

[No. 19,426. Filed April 4, 1961. Rehearing denied May 16, 1961. Transfer denied February 15, 1962.]

96

George A. *Pawloski*, of Michigan City, for appellant.

Thomas C. *Mullen*, of Michigan City, for appellee.

PFAFF, P. J.—This appeal challenges an award by the Full Industrial Board denying compensation to the appellant. That part of the award necessary for an understanding of the issues here involved reads as follows:

"That on the 18th day of February, 1958, one Elias Thomas, plaintiff's decedent, was in the employ of the defendant at an average weekly wage in excess of Sixty-Five Dollars ($65);

"That on said date he sustained personal injuries by reason of an accident arising out of and in the course of his employment with the defendant, which said accident resulted in his immediate death;

"That the defendant had knowledge of said accidental injury and death and did pay for the statutory burial expenses for the said plaintiff's decedent;

"That at the time of said accidental injury and death the decedent did not leave surviving him any dependents, either presumptive or factual, who were dependent upon him for their maintenance and support;

"That at the time of his death and for some time prior thereto the plaintiff herein, decedent's daughter, lived with the said decedent and took care of the said decedent's home for him during said period of time when she resided in his household, and was not gainfully employed.

"It is further found that *on the 12th day of November, 1949, the plaintiff married one James Fogle;*

"*That on August the 5th, 1953, the said plaintiff's husband, James Fogle, died, and that later*

*she moved in the home of her father, said plaintiff's decedent, where she remained and was still living there at the time of the said decedent's death.*

"It is further found that the said plaintiff was not a presumptive or factual dependent of the said decedent at the time of the said decedent's accidental injury and death." (Emphasis supplied).

The review presents but one question: Whether the words "unmarried child" as used in the Workmen's Compensation Act, §40-1403a (f), Burns' 1952 Replacement, includes a child whose marriage has been terminated, or is limited to a child who has never been married. The Statute reads in part as follows:

"The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in the preceding section: . . .

"(f) An unmarried child over the age of eighteen (18) who at the time of the death of the parent is keeping house for and living with such parent and is not otherwise gainfully employed.

"As used in subsections (c), (d), (e) and (f), the term 'child' shall include stepchildren, legally adopted children, posthumous children and acknowledged illegitimate children. The term 'parent' shall include stepparents and parents by adoption. (Acts 1929, ch. 172, Sec. 38a, as added by Acts 1947, ch. 162, Sec. 8, p. 523.)"

Appellant's father sustained personal injuries by reason of an accident arising out of and in the course of his employment with appellee, which accident resulted in his immediate death.

At the time of his death and for some time prior thereto appellant, who is over the age of eighteen years and a widow kept house for and lived with her father and was not otherwise gainfully employed.

The Industrial Board concluded that appellant was not a presumptive dependent and found against her on her application.

We find the following in 91 C. J. S. 503:

"UNMARRIED. 'Unmarried' is a word of flexible meaning, and it has no fixed meaning, no fixed technical meaning in law, with the result that the authorities do not always agree as to the significance of the term.

" 'Unmarried' means single; having no husband or no wife; not married; and the last is the literal sense of the word.

"Those who are not married may be properly separated into two classes: Those who have never been married and those who have been married, but whose marriages have been dissolved by death or by divorce; and the word 'unmarried' may properly, and in its literal sense, be applied to either class. Which class is meant *by the use of the word in a particular case* must be determined *by the connection in which it is used*, and, if in an instrument, by the language of the instrument as a whole, and the purposes to be effected thereby.

"The primary meaning which in most instances is also the ordinary meaning of the word 'unmarried' is never having been married, or without having been married; but the word is not always used in this sense, and it may be used in its secondary or less accustomed sense, and in this sense it means not being married at the time in question; not having a spouse at the time in question; not having a husband or wife at the time in question. Accordingly, 'unmarried,' in this sense, may be used of a widow or widower, and of a divorced person.

"It has been said that numerous cases may be cited in support of the two meanings of the word, and that courts as well as lexicographers have held either use to be correct and justified. While it has been said that the word is more frequently employed to refer to people who have never been married than it is to refer to widows,

widowers, or divorced persons, and in the absence of context showing a contrary intention, 'unmarried' is to be construed according to its ordinary or primary meaning, that is, never having been married, *only slight circumstances will be sufficient to give 'unmarried' the meaning of not having a husband or wife at the time in question.*" (Emphasis supplied.)

Webster's New International Dictionary, Second Edition, defines "Unmarried" as follows:

"UNMARRIED, adj. Not married; specif., Law, designating: a. One who has not been married. b. One who has been divorced; also, sometimes, a widow or widower."

Other similar definitions from various law dictionaries are called to our attention. See also Words & Phrases, Permanent Edition, Vol. 43, pp. 334, 335.

The Workmen's Compensation Act is gounded in justice and should be liberally construed to accomplish the end for which it was enacted. *Blue Ribbon Pie Kitchens* v. *Long* (1952), 230 Ind. 257, 261, 103 N. E. 2d 205; *Pollock* v. *Studebaker Corporation* (1952), 230 Ind. 622, 105 N. E. 2d 513.

The language in which the Workmen's Compensation Act is couched must be given such an interpretation as will give effect to the purpose and intent of the legislature in enacting the act. The Act, being remedial in nature, should be given a liberal construction to accomplish the purposes for which it was enacted, and accordingly, it should be liberally construed in favor of employees or beneficiaries. However, the rule of liberal construction does not permit the law to be distorted so that compensation will be granted in violation of specific statutory provisions. 30 West's Indiana Law Encyclopedia, §5, pp. 256, 257 and cases cited. See also 30 West's Indiana Law Encyclopedia, §62, pp. 306, 307.

While there can be no doubt that Workmen's Compensation Statutes are in derogation of the common law, such legislation falls in a class which the courts have treated as deserving of special liberality. As already seen, the compensation plan is based upon a realization of the obligation which industry owes to its workers. It is social legislation designed to provide a means by which a workman or his dependents can obtain necessary economic assistance when wage earning capacity is limited or extinguished. Like all social legislation, it is to be liberally construed. Accordingly, the Indiana courts have repeatedly emphasized that the Act was not designed to narrow the rights of an injured workman as they existed at common law, but instead, to protect employees and their families with an expeditious remedy for personal injury or death. The cases supporting a liberal construction in every section and in every clause of the Act are myriad. Of course, the rule of liberal construction does not entitle either the Industrial Board or the Appellate Court to distort the law so that compensation can be given in violation of specific statutory terms. Small's Workmen's Compensation Law of Indiana, §1.4, p. 11.

It was held in *Guevara* v. *Inland Steel Co.* (1950), 120 Ind. App. 47, 88 N. E. 2d 398, as follows:

> "In construing the legislative intention a measure of liberality should be indulged in to the end that in doubtful cases dependents may not be deprived of the benefits of the humane provisions of the Act. *Meek* v. *Julian* (1941), 219 Ind. 83, 36 N. E. 2d 854; *Public Service Co. of Ind.* v. *Wiseman* (1936), 102 Ind. App. 640, 4 N. E. 2d 568.
>
> "And it has even been said that the Act should be liberally construed to promote the purpose of its enactment, 'even to the inclusion of cases

within the reason although outside the letter of the statute,' although we do not base our opinion on this. *In re Duncan, supra; Homan* v. *Belleville Lumber and Supply Co.* (1937), 104 Ind. App. 96, 108, 8 N. E. 2d 127; *Dietrich* v. *Smith* (1931), 93 Ind. App. 219, 176 N. E. 636. We recognize, of course, that the rule of liberal construction does not permit the law to be distorted so that compensation will be granted in violation of specific statutory provisions. *J. W. Jackson Realty Co.* v. *Herzberger* (1942), 111 Ind. App. 432, 40 N. E. 2d 379.

" 'We believe that it should be the concern of the court to interpret the act in such manner as to help the legislature accomplish the end that it intended and that the act should be used as a starting point from which judicial reasoning should begin with a view to the correction of the evils and an accomplishment of the ends sought.' *Homan* v. *Belleville Lumber and Supply Co., supra.*"

Under the act as it was prior to 1947, the dependency of any child not incapacitated terminated upon reaching the age of eighteen, regardless of actual dependency. Small's Workmen's Compensation Law of Indiana, §10.9, p. 287 and cases there cited.

As Dr. Small states:

"The harshness of such a result became apparent in cases where a daughter over the age of eighteen gave up a career of her own in marriage or vocation and undertook to keep house for her working father."

Under the above quoted section of the present statute the fact that the unmarried child was emancipated or that the deceased parent had no legal obligation to support the child is not a factor to be considered. Neither is the fact that a child may have lived apart from the parent for a time and earned his or her own living a factor. *The applicability*

*of the statute depends upon the facts existing at the time of the death of the parent.*

We do not believe that the legislature intended to discriminate between a child who may have lived apart from the parent for a time pursuing a career in some vocation, which career has terminated, and one who may have lived apart from a parent pursuing a career in a marriage which has terminated.

Had the legislature meant to exclude all unmarried children except those who had never been married it could easily have indicated such intention. A child who at the time of the death of the parent is keeping house for and living with such parent and not otherwise gainfully employed, whose marriage has been terminated, stands in the same relationship to the parent as one who has never been married in that his or her actual condition is that of a single and unmarried child.

Where a statute is so plain and unambiguous that it is susceptible of only one construction, we should not be concerned with the consequences resulting from that construction. We may not legislate. But where, as in this case before us, a statute if fairly susceptible of more than one construction we may consider whether the legislature could have intended a construction which may have the effect of producing unfair, unequal and incongruous results. Where the language of a statute does not by clear and unmistakable language compel such a result, a construction which renders the statute unfair or unjust in its operation should be avoided. See 50 Am. Jur. *Statutes*, §368, *et seq.* We believe that we should construe a statute so as to avoid any conflict with constitutional limitation, if such can be done.

We hold that under the circumstances here apparent the words "unmarried child" as used in §40-1403a (f), *supra,* should be construed to include a child whose marriage has been terminated as well as a child who has never been married.

Award reversed and cause remanded for further proceedings not inconsistent with this opinion.

Bierly, Gonas and Kelley, JJ., concur.

NOTE.—Reported in 173 N. E. 2d 668.