KNOX COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 19,942. Filed February 1, 1966. Rehearing denied April 4, 1966. Transfer denied November 22, 1966.]

*Parr, Parr, Parr & Richey,* of Lebanon, and *Shake and Shake,* of Vincennes, for appellant.

*Hubert E. Wickens,* of Indianapolis, for Decatur County Rural Electric Membership Corporation, Southeastern Indiana Rural Electric Membership Corporation, Dubois Rural Electric Co-operative, Inc., and Indiana Statewide Rural Electric Cooperative, Inc., amici curiae.

*Paul G. Jasper* and *Greg K. Kimberlin,* of Plainfield, *Gray & Waddle,* of Petersburg, and *Emison & Emison,* of Vincennes, for appellee.

HUNTER, J.—On December 5, 1959, Public Service Company of Indiana, Inc., appellee (hereinafter referred to as Company) filed its complaint in two paragraphs against Knox County Rural Electric Membership Corporation (hereinafter referred to as Knox REMC). The action was brought on account to collect for a so-called "Rate B" charged for electrical energy furnished by the Company to Knox REMC during the period of February 1 to August 23, 1957. The action was filed under purported authority of an order of the Public Service Commission of Indiana dated December 14, 1956 effective February 1, 1957.

Trial was had by the court without the intervention of a jury, and the only evidence tendered and considered was stipulated and consisted solely of exhibits. The court entered judgment for the appellee company against the appellant Knox REMC on both paragraphs of the complaint in the total amount of $8,158.32 with interest at the rate of 6% per annum. Said judgment included sums on account for the "Bruceville connection" under Paragraph I and the "Poseyville connection" under Paragraph II of said complaint.

The judgment was predicated upon the application of *Rate B* as set forth in a certain Commission order of December 14, 1956.

The sole error assigned is that the trial court erred in overruling appellant's motion for a new trial. The two specifications of the motion for a new trial were as follows:

(1)  The decision of the court is contrary to law, and
(2)  the decision of the court is not sustained by sufficient evidence.

It is abundantly clear that both specifications of error present a question of law and are combined and supported by one argument.

The appellee seeks to criticize the appellant's statement of the record in its brief as being too perfect for the reason that said statement includes a reproduction of the entire transcript, and urging therefor, that as such, it is not a concise statement of the record and is not in keeping with the spirit and letter of the Supreme Court rules governing this court on appeal. Nothing further needs be said about such criticism except to say that since all the facts in issue were stipulated, we need only look to the appellant's brief to ascertain the facts necessary to our determination of this appeal.

There were many disputed items in the hearings before the Commission and the Hendricks Circuit Court. However, the question of a raise in the Company's overall revenue was the

subject and purpose of the various hearings conducted. All questions pertinent to the rate increases growing out of said hearings were completely litigated and were adjudicated finally by the Hendricks Circuit Court and the Supreme Court in the case of *Boone County REMC* v. *Pub. Serv. Comm. of Ind.* (1959), 239 Ind. 525, 159 N. E. 2d 121.

Therefore, all the Commission's findings and orders pertaining to rate increases as revealed by the record herein may be summarized as follows:

(a) March 9, 1956 the Commission reported that it then found the appellee Company *entitled to an increase* in its rates;

(b) March 21, 1956 the Commission authorized a 5.35% across the board increase, by way of surcharge, on all customers, pending the fixing of final rates;

(c) December 14, 1956 the Commission approved a schedule of rates filed by the Company and directed the establishment of Rate B, the penalty provision, applicable to sales to REMCs for resale to industrial or commercial power users having a demand of 250 KW or more. Said rates became effective under said order as of February 1, 1957.

(d) August 19, 1956 on appeal by the Boone County REMC and others, the Hendricks Circuit Court ordered the matter back to the Commission for its further consideration.

(e) August 23, 1957 the Commission changed the order which became the *final order* and in so doing eliminated Rate B from the order and stating in effect that there was insufficient evidence upon which to predicate and justify the establishment of said penalty rate.

(f) December 19, 1957 the Hendricks Circuit Court approved the amended, changed and modified Commission order of August 23, 1957 as set forth in (e) above.

The Hendricks Circuit Court in so doing, in its final approval, stated *that there was only one order before the court*, the same being the order of August 23, 1957, and that *the*

*order was changed in one respect only and that was by eliminating Rate B.*

The Supreme Court of Indiana in an appeal from said Hendricks Circuit Court in said case of *Boone County REMC* v. *Pub. Serv. Comm. of Ind., supra,* stated:

> "While reference is made to the separate orders, there is, in fact, but a *single final order which embodies the various modifications during the proceedings.* Burns' 1951 Repl., § 54-437." (our emphasis)

And the Court concluded in the same opinion as follows:

> "The judgment and discretion exercised by the Commission in arriving at its final orders of *March 9* and *21,* 1956 and *December 14, 1956 (as modified on August 23, 1957)* are supported by the evidence and not contrary to law." (our emphasis)

The Commission finding of March 9 and subsequent order of March 21, 1956, referred to in (a) and (b) above, created a 5.35% across the board increase as an overall charge to all the Company's customers including REMCs pending the fixing of final rates. The Commission order of December 14, 1956 established a schedule of rates for residential and domestic sales, farm and rural sales, and REMCs including in the latter Rate B. The order of August 23, 1957 (e) above completely eliminated the so-called Rate B from the Commission order of December 14, 1956 (c) above. Thus, it appears from the record that the December 14, 1956 order remained in effect and unchanged by the order of August 23, 1957, except as modified thereby in the elimination of Rate B.

Therefore, the sole question presented by this appeal may be simply stated as follows: Was Rate B a valid penalty charge enforceable by the Company against Knox REMC from February 1, 1957 to August 23, 1957?

The appellant contends that there was no valid order existing upon which the Company could assert a right to said

penalty Rate B. Although since repealed §§ 54-436 and 54-437, at the time in question, provided for the commencement of an action in any circuit court of any county in which the utility operated to vacate or set aside a decision, ruling, order or determination of the Commission. The disputed orders including the December 14, 1956 order were challenged in the Hendricks Circuit Court pursuant to the provisions of the then existing statute.

All steps in the hearing procedures before the Commission and the Hendricks Circuit Court were taken pursuant to the following sections of the statute:

"Burns 54-436—If, upon the trial of such action, evidence shall be introduced which is found by the court to be materially different from that offered upon the hearing before the commission, the Court before proceedings to render judgment, unless the Public Service Commission shall, in writing, waive the necessity, shall transmit a copy of such materially different evidence to the commission and shall stay further proceedings in said action for fifteen (15) days from the date of such transmission. Upon the receipt of such evidence the commission shall consider the same and may, in any manner, change its decision, ruling, order, determination, requirement or direction complained of in said action, and shall report its action thereon to said court within ten (10) days from the receipt of such evidence."

"Burns 54-437—If the commission shall so report that it has rescinded its decision, ruling, order, determination, requirement or direction complained of, the court shall thereupon dismiss the action; *if the commission shall so report that it has otherwise changed its action the changed or amended decision, ruling, order,* determination, requirement or *direction* shall *take* the *place of* the *original decision,* ruling, *order,* determination, requirement or direction complained, *and judgment shall be rendered thereon as though made* by the commission *in the first instance.* If the original action of the commission complained of be not rescinded or changed by the commission, judgment shall be rendered upon such original decision, ruling, order, determination, requirement or direction." (our emphasis)

The appellant asserts that the Commission's order of August 23, 1957 changed and modified its order of December 14, 1956

by eliminating Rate B; further, that § 54-436, *supra,* then in force gave the Commission express, plain and clear authority to reconsider its order of December 14, 1956; that § 54-437, *supra,* provided that *"the changed or amended"* order of August 23, 1957 (e) above *"shall* take the place of the original order" of December 14, 1956 (c) above "and *judgment shall be rendered* thereon *as though* made *by* the *Commission in the first instance."* (f) above.

The appellant's contention that there is no valid order in existence establishing Rate B is supported by the record. The Commission's order of August 23, 1957 directed the elimination of Rate B. A portion of said order as it repudiated Rate B is set forth as follows:[1]

---

1. . . . "In the careful consideration which we have given this matter in the performance of our statutory duty, we have found concern only with that portion of the order which resulted in the establishment of the Rate B applicable to REMCs. . . .

Obviously, this question and the determination of the problem in the best public interest and with the greatest fairness to electric consumers in every class is one involving many complications and clashing interests. (1) In our judgment, there are much factual data which should be developed and carefully studied before a determination of this matter can be fairly made as policy standard of the Commission. (2) In our study of the record in this cause, we are impressed with the dearth of facts in the record which we think ought to be at hand in considering and deciding this important question of the propriety and scope of the preferential classification given REMCs as wholesale purchasers of electric energy for resale. (3) Neither in the Commission hearings nor in the subsequent Court proceedings have such facts been brought out to an adequate degree. (4) The matter of the preferential classification limitation was not dealt with in the briefs or the oral arguments here made. (5) Nor did the Commission focus the attention of the interested parties upon the fact that it was concerned over this problem. (6) In this situation, this Commission would not be willing, by reason of leaving the orders of December 14, 1956 unchanged, to permit the continuance of 'Rate REMC' of Petitioner, as now in effect. What the Commission has just stated is not intended as expressing in any way a view by the Commission as to what conclusions might be reached on this question after having before it all material facts and after making a full analysis and study of the matter, aided by a full showing and argument on the issues involved. (7) The Commission has not, of course, had the advantage of such aids and such aids are not found in the record of this case either in the Commission or the Court proceedings. In their absence, the Commission is not willing, in a situation involving so important a public interest, to leave stand, without modification, the provisions of the order relative to 'Rate B.' To do so, would be equivalent to putting the stamp of approval on an action which, in view of its

The Commission's order and its stated reasons for repudiating the order of December 14 as it pertains to said Rate B may be summarized as follows:

    (1)    Much factual data should be developed and carefully studied before determination of the establishment of Rate B should be finally made;

    (2)    there is a *dearth of facts* in the record on said subject;

    (3)    *no material facts on said subject* were brought out adequately either before the Commission or the various phases of subsequent court proceedings;

    (4)    the subject of Rate B was *not substantiated* in the briefs or oral arguments before the Commission or the Hendricks Circuit Court;

    (5)    the Commission in its hearings *did not focus attention of all interested parties* that it was concerned with the subject of Rate B;

    (6)    *material facts concerning Rate B are not found in the record* either *before* the *Commission or* before *the Hendricks Circuit Court;*

    (7)    the order of December 14, 1956 as it related to Rate B *did not have adequate support in the record* and the Commission refused to put its stamp of approval on an action of such public importance.

That portion of the Commission's order repudiating Rate B and its reasons for doing so as summarized immediately above could not have stated more clearly and unquestionably that the establishment of said rate by the Commission in its former order was erroneous. No rule of law is more well settled than that an order of the Commission must be based upon facts found by the Commission which in turn must be based upon substantial evidence. *Pub. Serv. Comm.* v. *Ft. Wayne U. Ry. Co.* (1953), 232 Ind. 82, 111 N. E. 2d 719; *Kosciusko County, etc.* v. *Public Service Comm.* (1948), 225 Ind. 666, 77 N. E. 2d 572 and cases cited

potential public importance, does not have adequate support in the record of this case." Transcript, pp. 111-115, appellant's brief, pp. ·232-234.

therein. The most recent case is *Pub. Ser. Comm. et al., etc.* v. *Ind. Bell Tel. Co.* (1955), 235 Ind. 1, 130 N. E. 2d 467.

The reasons for repudiation of Rate B as a separate and special penalty rate could not be better stated than as by Chairman Buchanan of the Commission to whom the rate case was assigned for hearing who in his dissent from the order creating the penalty Rate B pertinently observed as follows:

> "I observe in the record no evidence that the cost of service to Public Service Company of Indiana, Inc., is greater on that part of the energy delivered to a wholesale purchaser REMC which it in turn delivers to a consumer with a 250 KW load than it is on any other KWH delivered simultaneously through the same substation and same meter. The evidence is that the yield of return to Public Service Company of Indiana, Inc., from wholesale deliveries to membership corporations at rates prescribed by existing contracts is 11% greater than the Company proposed rates would yield from its sales to its own rural consumers. There is no evidence in the record as to what the dollar yield of the rates prescribed by the majority order would be."

and

> "It is difficult to conceive that the General Assembly intended the wastes and evils of a system of duplicated electric distribution facilities in the same service 'territory'; one set owned, maintained and operated by Public Service Company of Indiana, Inc., exclusively to serve power loads of 250 KW or more; and, another parallel and duplicate set of distribution facilities owned by the membership corporations for the purpose of serving loads of 249 KW or less located next door, across the street or down the road from the 250 KW type load."

Consequently, the Commission in the above referred to order of August 23, 1957 completely eliminated the special penalty Rate B as follows:

> ". . . It Is Therefore Ordered by the Public Service Commission of Indiana that the order of the Commission, entered on December 14, 1956, be *modified* and *changed* in the following respects:

"Public Service Company of Indiana, Inc., shall, on or before September 9, 1957, file with the Utilities Tariff Department of this Commission, an amended tariff 'Rate REMC' which shall

" (1)    become effective for billings made on or after September 16, 1957, and

" (2)    on and after said effective date, change and amend Rate REMC "Schedule for Wholesale Service to Rural Electric Membership Corporations for Distribution and Retail Sale to its Customer Members' as follows,—

" (a)    *by eliminating the present 'Availability' provisions thereof* (appearing on Original Sheet No. 21 of the rate schedule) and *inserting in lieu thereof,* the following 'Availability' provision:

" 'Availability'

" 'To non-profit rural electric membership corporations organized under the 'Rural Electric Membership Corporation Act' of Indiana (hereinafter called 'REMC') for the purchase by the REMC of electric energy to be used solely for its own use and for distribution and retail sale to ultimate users who are members of the REMC.'

" (b)    *by eliminating the present 'Industrial Load—Determination Thereof'* and 'Method of Billing' provisions thereof (appearing on Original Sheet No. 21 of the rate schedule),

" (c)    *by eliminating the caption 'Rate A'* appearing as the first line of text on Original Sheet No. 21-A of the rate schedule,

" (d)    *by eliminating the words 'under this Rate A, or a combination of billing under Rate A and Rate B,'* appearing in the first line under the caption 'Minimum Charge' on Original Sheet No. 21-A of the rate schedule, and

" (e)    *by eliminating Rate B from the rate schedule* (Original Sheet No. 21-C)." Transcript, pp. 306-307, appellant's brief, pp. 234-235.

It may readily be seen therefore that the Commission order of August 23, 1957 completely eliminated any consideration or application of Rate B with clearly stated reasons therefor. Consequently, it is the appellant's position that the express, clear language of the statute § 54-437, *supra,* must be given an express, clear and plain application by this court. It is a recognized rule of statutory construc-

tion that a statute must be held to mean what it clearly and plainly expresses and that its plain, clear and obvious meaning may not be enlarged or restricted. 26 I.L.E., Statutes, § 101, p. 308.

It is clear that the Hendricks Circuit Court considered the August 23, 1957 order of the Commission as the only order, pertinent to Rate B, upon which it could render judgment as indicated by its decision of December 19, 1957 hereinabove quoted. It is also abundantly clear from the expressions of our Supreme Court in the *Boone County REMC* case, *supra,* that it considered the rate order of December 14, 1956 as modified by the August 23, 1957 order (e) above as the only order before the court in that appeal, *that is to say the court approved the final order therein* which by modification and change, in effect repudiated the establishment of said rate and ordered its elimination.

The appellee company in its brief asserts the following proposition:

"In the recent case of *Indiana Telephone Corp.* v. *Public Service Commission of Indiana,* 171 N.E. 2d 111, 131 Ind. App. 314 (1960) this Court had this very question before it. The case arose before the 1957 amendments to the Public Service Commission Act, so the Court's comments are applicable to our problem."

It is significant however that the appellee fails to state that the above case was decided under the statute as amended by ch. 189 of the Acts of 1957 which in effect deleted the above sections §§ 54-436 and 54-437, *supra.* However, ch. 189 of the Acts of 1957 which became effective on passage March 12, 1957, § 12 thereof provides as follows:

"SEC. 12. This act shall not affect actions or proceedings now pending in the circuit, superior, Appellate or Supreme Courts of this state, heretofore commenced under the provisions of any of the laws or parts of laws herein repealed; and the same may be *prosecuted, defended* and *appealed with the same effect* and in the same manner *as though this act had not been passed.*" (our emphasis)

Thus, it is readily apparent that the proceedings before the Commission and Hendricks Circuit Court instituted in 1955 came within the exception provisions of § 12, ch. 189 of the Acts of 1957 as set forth above. By the very terms of ch. 189, *supra,* the law applicable to the issues at bar remained in existence respecting the determination of the various appeals to the Hendricks Circuit Court and the Supreme Court.

We are of the opinion that the case of *Indiana Tel. Corp.* v. *Pub. Serv. Comm., supra,* has no relevancy to the issue presented by this appeal and to sustain its inapplicability we quote from said case, as follows:

"The petition for rehearing in the case at bar was filed January 31, 1957. Said Acts of 1957, Chapter 189, became effective March 12, 1957. Inasmuch as of the effective date of said Act, no proceedings in the case at bar were pending in a circuit, superior, Appellate or Supreme Court; hence, within the provisions of said Section 12, quoted above, no impediment prevented the application of any provisions of said Chapter 189 of the 1957 Acts, that may be applicable in the case at bar."

A close examination of the *Indiana Tel. Corp.* case, *supra,* indicates very clearly that the court in that case was concerned with the application of §§ 54-112, 54-423, 54-319 and 54-444, Burns' 1951 Replacement. § 54-423, *supra,* is set forth as follows:

"Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules, or joint rate or rates, to be unjust, unreasonable, insufficient, or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this act, the commission shall determine, and by order fix just and reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this act."

In said case it was stated re § 54-423, *supra:*

"We find nothing in the statute giving the Commission the power to cancel, or to fix, rates retroactively."

We believe this is a correct statement of the law as it is applicable to the proceedings outlined in said section. However, said section pertains to proceedings before the Commission and judicial reviews thereof under the amended Act of 1957 and in no way relates to proceedings then on appeal to trial courts wherein the Commission's orders were sought to be set aside or vacated as provided in §§ 54-436 and 54-437, *supra*. The inapplicability and irrelevancy therefore of the *Indiana Tel. Corp.* case, *supra,* so far as the issues in the case at bar are concerned are quite readily apparent.

The appellee also cites many cases from other jurisdictions to persuade this court that to uphold appellant's position with respect to Rate B would give retroactive effect to the Commission order of August 23, 1957. In answer to such argument, we only need state that we are of the opinion the provisions of §§ 54-436 and 54-437, *supra,* are determinative of the issue before us. It matters not that rules announced in other jurisdictions pursuant to statutes with dissimilar provisions as in the *Indiana Tel. Corp.* case, *supra,* hold to the contrary. We are concerned here only with the clear and unambiguous language of the then existent sections of the Indiana statute which are controlling of our interpretation of the effect of the August 23, 1957 order. 26 I.L.E., § 101, p. 308, *supra.* There is a clear legal distinction to be made between a Commission order which by its very terms attempts to establish or direct a retroactive application of rates, and an order which by operation of law, that is to say by the clear and unambiguous terms of the statute, is declared to be a final order *as if made in the first instance.* § 54-437, *supra.* The fact that the repeal of said sections may have been in pursuance of a sound and wise legislative policy, can in no way alter or change the legal necessity for applying their provisions to the issue at bar.

The Commission's findings in that portion of its August 23, 1957 order repudiating Rate B and eliminating said rate, are sufficiently specific and clear to enable this court to review

the effect of the proceedings in the Hendricks Circuit Court and later the appeal therefrom to the Supreme Court in the *Boone County REMC* case, *supra*. *Pub. Serv. Comm.* v. *Ft. Wayne U. Ry. Co.*, *supra*.

A careful analysis of the opinion of the Supreme Court in the *Boone County REMC* case, *supra*, reveals the following pertinent details:

> "The record shows . . . on December 14, 1956, the Public Service Commission, in an order, approved a general rate schedule and adjusted the across the board rate increase among the various rate payers, as high as an increase of 8.65% for residential and domestic sales; 4.8% for farm and rural sales; and the lowest of 3.76% for REMC sales. The December 14, 1956 order was subsequently modified by an order of August 23, 1957 *in certain minor details*." (our emphasis)

The appellee's assertion that appellant's appeal is a collateral attack upon a judgment established by *res judicata* is not confirmed by the record; neither is it supported by the Supreme Court as quoted above. The Hendricks Circuit Court approved the rate increase order of December 14, 1956 as modified by the August 23, 1957 order as the *single final order*. Likewise, the Supreme Court on appeal upheld said modified final order. Therefore, the adjudication in the *Boone County REMC* case, *supra*, was as stated therein approval of "but a single final order which embodies the various modifications during the proceedings. Burns' 1951 Repl., § 54-437," p. 532. Unquestionably one of the *"minor details"* of modification referred to therein at p. 531 was the repudiation and elimination of the penalty Rate B by the Commission on August 23, 1957.

Persuasive of our position are the provisions of § 54-203, Burns' 1951 Replacement then in force as part of the statutory law applicable to the case at bar, which in part, provided as follows:

> "Pending the appeals as in this section provided the utility affected by an order or judgment of the commission

and/or general term shall have the right to collect the rate as fixed by said order or judgment or at the old rate, whichever is higher in amount, and shall refund the same to the consumer if such difference be not sustained finally or if such rate as fixed by the commission is sustained in the circuit court or general term or the Supreme Court and is *found finally to be confiscatory,* the said difference shall be the absolute property of the utility." (our emphasis)

On December 19, 1957 the Hendricks Circuit Court in the *Boone County REMC* case, *supra,* in its approval of the December 14, 1956 order as changed and modified by the August 23, 1957 order stated in part as follows:

". . . The *question of confiscation* of Company's property *is* therefore *now removed from consideration by the court. . . ."* (Transcript, p. 311, appellant's brief, p. 241.) (our emphasis)

Also the trial court stated that both the appellee and Commission sought to have the single final order upheld. Appellant's brief, p. 241, transcript, p. 311. Thus it would appear that even if the Company had collected the additional revenue derived by application of the penalty Rate B for the period in question it would have been required to refund the same to such consumer. Therefore, it is difficult to give credence to the appellee company's assertion that it was required by law to collect said rate without the possibility of eventual refund. In other words, had the Company collected from Knox REMC the additional revenue for said period by application of Rate B pending appeal it would have done so at its peril.

From the record before us, we fail to perceive how the Company could justify its action in the trial court as a matter of law. For the reasons stated, it is conclusively demonstrated that there was no basis for its cause of action commenced almost twenty-eight (28) months after the repudiation and complete elimination of Rate B, and six (6) months after the Supreme Court's affirmance of the Hendricks Circuit Court's decision in the *Boone County REMC* case, *supra.*

For all the foregoing reasons, we hold that by operation of law, § 54-437, *supra,* eliminated Rate B as if Rate B never existed. The establishment of the penalty Rate B was not authorized either by fact or law. It was outside the scope of authority of the Commission and was therefore erroneous, invalid and void from the date of its inception. *State* v. *Lindsey; State* v. *Carroll* (1952), 231 Ind. 126, 106 N. E. 2d 230; *Baltimore & Ohio R. R. Co.* v. *Pub. Svc. Comm.* (1961), 132 Ind. App. 493, 177 N. E. 2d 275.

It is our opinion that the appellant's position is sustained by the law applicable to this case.

Therefore the decision of the trial court is reversed and this cause is remanded with instructions to vacate the judgment for Public Service Company of Indiana, Inc. and to enter judgment for the Knox County REMC.

Reversed.

Prime, C.J., Smith, P.J., Bierly, Carson, Faulconer and Mote, JJ., concur.

Wickens, J., not participating.

NOTE.—Reported in 213 N. E. 2d 714.