ECONOMY OIL CORPORATION *v.* INDIANA DEPARTMENT OF STATE REVENUE.

[No. 1-574A80. Filed December 30, 1974.]

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellant.

*Robert L. Sheaffer, Sheaffer & Yeager,* of Shelbyville, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Department) is appealing a judgment allowing the plaintiff-appellee (Economy) to recover payments assessed for unreported tax liabiilty. The two issues raised in the appeal are:[1]

---

[1. Economy has raised a question in its brief concerning the sufficiency of the Department's brief. Our holding on the question is that the Department's brief sufficiently articulates the issues and arguments

1. Whether the Motor Fuel Tax Law levies the exclusive excise tax on the sales of motor fuel, and

2. Whether Economy's business records were sufficient to establish the amount of its' exempt sales.

We reverse as to the first issue and affirm as to the latter.

The facts pertinent to the appeal are that Economy is a petroleum distributor which operates four service stations as well as tank wagons in east central Indiana. During 1968, 1969, and 1970 some of Economy's sales were to farmers, hospitals, and school bus drivers who had filed either single purchase or blanket sales tax exemption certificates with Economy.[2] Economy kept these on file in its office but did not make a list of exemption certificate holders for their employees' use. The employees, either by memory or the purchaser's word, determined whether sales taxes would be collected. The exemption certificates covered both cash and credit sales at the service stations and from the tank wagon.

At three of the four service stations exempt cash sales were recorded on a clip board. This daily tab would show the total exempt cash sales which then could be deducted from total cash sales to obtain the total amount of nonexempt cash sales. The other station used a similar method of recording exempted sales on a cash register tape.

Total nonexempt cash sales from all locations were posted daily to the cash book as the permanent record of net tax liability, however, the individual exempt cash sales were not posted to ledger cards.

The daily tabs, which did not identify the individual purchasers, were retained for a short period after posting and then disposed of.

---

to comply with the spirit of Ind. Rules of Pro. AP. 8.3(A)(5) and 8.3(A)(7), thereby allowing this court to formulate a decision on the merits. *See Board of Commissioners, County of Howard* v. *Kokomo Plan Commission* (1974), Ind. App., 310 N.E.2d 877; *Smith* v. *Chesapeake and Ohio Railroad Company* (1974), 160 Ind. App. 256, 311 N.E.2d 462.

2. For the exemption status of this type of sale *see* IC 1971, 6-2-1-39 (Burns Code Ed.).

Cash sales from the tank wagon were recorded on individual sales slips showing the number of gallons delivered, but not the dollar amount of the sale. Like service station exempt cash sales, the tank wagon cash sales were not posted to ledger cards.

The Department audited Economy for the years 1968 through 1970 and ultimately assessed them for unreported tax liability on two types of sales. One was the service station cash sales, treated by Economy as tax exempt, without sufficient "source" or "proof" documents. The other was cash and credit sales with exemption certificates lacking Retail Merchant, Social Security, or Public Service Commission of Indiana numbers.

Economy filed suit against the Department for recovery of payments assessed against them and eventually obtained the judgment from which this appeal arises.

Economy took the position that the sales tax did not apply to motor fuel sales during the audit period. The basis for the argument rests, in part, in the Motor Fuel Tax Act of 1943, IC 1971, 6-6-1-31 (Burns Code Ed.). The substance of that section is that the motor fuel tax is in lieu of any excise, privilege, or occupational tax on manufacturing, distributing, or selling motor fuel. The act also prohibits governmental subdivisions from collecting or levying taxes on motor fuel.

Additionally, Economy continues, the State Gross Retail Tax Act of 1963 did not specifically mention motor fuel, although a 1973 act, IC 1971, 6-1-1-28(p) (Burns Code Ed. Supp. 1974) states that a sales tax shall be collected on the full amount of the motor fuel sales price. The 1973 enactment demonstrates, it is argued, an intent to omit sales tax on motor fuel in the 1963 sales tax statutes.

Furthermore, the 1963 sales tax act is general in nature which requires the more specific 1943 Motor Fuel Tax Act to prevail in its language, so argues Economy.

The Department responds that all of a retail merchant's transactions which constitute selling at retail are taxable

unless specifically exempted or excluded.[3] Moreover, the Department stresses its continuous policy of collecting sales tax on motor fuel retail sales since 1963. That fact, it is argued, should be given considerable weight by this court in construing the pertinent statutes. It is finally argued that there is no constitutional limitation on the number of excise taxes which may be imposed by the General Assembly.

For the reasons stated hereafter we hold that the trial court erred, as a matter of law, in its holding that the "Legislature did not intend to include motor fuel in the [Gross] Retail Sales Act of 1963".

When construing a statute, this Court is bound by several familiar rules of statutory construction, IC 1971, 1-1-4-1, Ind. Ann. Stat. § 1-201 (Burns 1967) ; I.L.E. STATUTES §§ 101-195. The bedrock rule of statutory construction is that a statute clear and unambiguous on its face need not and cannot be interpreted by a court. *Morgan County R.E.M.C.* v. *Indianapolis Power & Light Co.* (1973), 261 Ind. 323, 302 N.E.2d 776; *Knox County R.E.M.C.* v. *Public Service Commission of Indiana* (1966), 139 Ind. App. 547, 213 N.E.2d 714; *Meade Electric Co.* v. *Hogberg* (1959), 129 Ind. App. 631, 159 N.E.2d 408. A cardinal principle of statutory construction mandates the court to interpret ambiguous statutes in order to ascertain and effectuate the general intent of the legislature. *Wayne Township* v. *Lutheran Hospital* (1974), 160 Ind. App. 427, 312 N.E.2d 122; *Kirby* v. *Indiana Employment Security Board* (1973), 158 Ind. App. 643, 304 N.E.2d 226; *Morgan County R.E.M.C., supra; Thompson* v. *Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657. Similarly, the spirit of an enactment will prevail over the letter of the law. *Town of Kewanna Water Works* v. *Indiana Employment*

---

3. There seems no doubt that Economy's sales activities are "transactions of retail merchants constituting selling at retail." IC 1971, 6-2-1-37 (Burns Code Ed.) "Retail merchants" are defined by IC 1971, 6-2-1-1(j) (Burns Code Ed.). "Selling at retail" is defined by IC 1971, 6-2-1-38(a) (Burns Code Ed.).

*Security Board* (1961); 131 Ind. App. 400, 171 N.E.2d 263. Another fundamental rule of statutory construction is that if a statute is susceptible to more than one interpretation, then the court may consider the consequences of a particular construction. *Boles* v. *State* (1973), 259 Ind. 661, 291 N.E.2d 355; *In re Annexation of Certain Territory* (1965), 138 Ind. App. 207, 212 N.E.2d 393, *reh. den.*, 138 Ind. App. 207, 213 N.E.2d 349; *Fogle* v. *Pullman Standard Car Manufacturing Co.* (1961), 133 Ind. App. 95, 173 N.E.2d 668. There is a strong presumption that the legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject. *Morgan County R.E.M.C., supra; Chaffin* v. *Nicosia* (1973), Ind. App., 297 N.E.2d 904. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious system. *State ex rel. Moore* v. *Smock* (1973), 156 Ind. App. 158, 295 N.E.2d 857; *Porter Memorial Hospital* v. *Harvey* (1972), 151 Ind. App. 299, 279 N.E.2d 583. In this respect, when two statutes on the same subject must be construed together, the court should attempt to give effect to both; however, where the two are repugnant in any of their provisions, then the latter statute will control and operate to repeal the former to the extent of the repugnancy. *State ex rel. Todd* v. *Hatcher* (1973), 158 Ind. App. 144, 301 N.E.2d 766; *Chaffin, supra.* Similarly, where one statute deals with a subject in general terms and another statute deals with a part of the same subject in a more detailed or specific manner, then the two should be harmonized, if possible; but if they are in irreconcilable conflict then the more detailed will prevail as to the subject matter it covers. *State ex rel. Todd, supra; Chaffin, supra; Citizens Gas & Coke Utility* v. *Sloan* (1964), 136 Ind. App. 297, 196 N.E.2d 290, *reh. den.*, 136 Ind. App. 297, 197 N.E.2d 312.

In construing tax statutes relating to assessment and collection, a liberal rule of construction must be indulged in order

to secure their uniform implementation. *Department of Treasury of Indiana* v. *Dietzen's Estate* (1939), 215 Ind. 528, 21 N.E.2d 137. However, it is a well established rule of statutory construction that the statutes levying or imposing taxes are not to be extended by implication beyond the clear import of the language of the statute in order to enlarge their operation. Instead, they are to be construed more strictly against the state and in favor of· the taxpayer. *Gross Income Tax Division* v. *Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50; *Ralph L. Shrimeyer Inc.* v. *Indiana Revenue Board* (1951), 229 Ind. 586, 99 N.E.2d 847; *Department of Treasury of Indiana* v. *Muessel* (1941), 218 Ind. 250, 32 N.E.2d 596.

Another fundamental rule of statutory construction is that a statutory amendment changing a prior statute indicates a legislative intention that the meaning of the prior statute has been changed. This raises a presumption that the legislature intended to change the law unless it clearly appears that the amendment was made to only express the original intention of the legislature more clearly. *Daubenspeck* v. *City of Ligonier* (1962), 135 Ind. App. 565, 183 N.E.2d 95, *transf. den.*, 245 Ind. 20, 191 N.E.2d 100; *Board of Commissioners of Perry County* v. *Sweeney* (1962), 134 Ind. App. 33, 181 N.E.2d 241; *Opp* v. *Davis* (1962), 133 Ind. App. 365, *reh. den.*, 133 Ind. App. 365, 180 N.E.2d 788. Another recognized rule of statutory construction is that if the legislature fails to change a statute administered by a state agency, then this inaction indicates the legislature's acquiescence in and satisfaction with the administrative construction. *State Board of Tax Commissioners* v. *Wright* (1966), 139 Ind. App. 370, 217 N.E.2d 596; *Baker* v. *Compton* (1965), 247 Ind. 39, 211 N.E.2d 162. The Indiana Supreme Court in *Baker* stated:

"We recognize the established authority that a long adhered to administrative interpretation dating from the legis-

lative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts." 211 N.E.2d 164.

The Court then continued:

"Although the interpretation placed upon the statutes by an administrative agency of the state may not be binding upon this Court if the interpretation is incorrect, such interpretation as has been made and applied in a number of previous adoptions, is entitled to considerable weight, not only to insure the stability of adoption proceedings brought pursuant thereto for a number of years, but as evidence of the meaning of the statute to those charged by law and most concerned with its administration." 211 N.E.2d 164.

Economy has very persuasively argued that in view of IC 1971, 6-6-1-31, *supra,* and IC 1971, 6-2-1-38 (p), *supra,* it is logical to conclude that the General Assembly did not intend to include motor fuel sales within the ambit of the sales tax act. However, in view of the aforementioned rules of statutory construction and upon a closer analysis of the applicable statutes, it appears that the Economy has misinterpreted IC 1971, 6-2-1-37, *supra.* Supporting this conclusion is the fact that the 1943 Motor Fuel Tax was a tax in lieu of all other excise taxes on the *business,* not the *transaction,* of manufacturing, selling or distributing motor fuel. This coupled with the fact that the motor fuel tax was in lieu of all other excise taxes that might be similarly imposed by any *subdivision or any municipal corporation of the state,* not the *state* itself, supports the Department's contention that IC 1971, 6-6-1-31, *supra,* and IC 1971, 6-2-1-37, *supra,* are not in conflict. Also in support thereof, the Department correctly states that the 1943 General Assembly could not except by constitutional amendment, restrict the taxing power of the 1963 General Assembly. Thus, since these two statutes are not in conflict there is no need to apply the specific-over-general rule of statutory construction.

However, the potential conflict between IC 1971, 6-2-1-38 (p), *supra,* and IC 1971, 6-2-1-37, *supra,* is more difficult to resolve. Economy has persuasively argued that when the General Assembly enacted IC 1971, 6-2-1-38(p), *supra,* it evidenced a material change of legislative intent and definitely showed that the legislature did not intend to include motor fuel sales within the scope of the sales tax act at the time of the adoption of the act. However, this argument does not appear to be supported by the aforementioned rules of statutory construction and case law. This conclusion is supported by the rule of statutory construction set out in *Baker, supra,* which recognized the presumption of legislative acquiescence. This presumption is applicable in this case since there has been a long adhered to administrative interpretation dating from the legislative enactment (1963), with no subsequent change having been made in the statute involved until 1973. This presumption is reenforced by the probability that most of the members of the General Assembly since 1963 have operated automobiles thereby buying motor fuel and paying the applicable sales tax. The subsequent change in the sales tax act in 1973 may be viewed as a clarification of this acquiescence rather than as a change of legislative intent. For these reasons, we conclude that the State Gross Retail Act of 1963, did impose the sales tax on the sale of motor fuel.

Especially applicable to a discussion of the Department's second issue, the adequacy of Economy's source or proof documents, is Ind. Rule of Trial Proc. 52(A), which states:

"On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

Additionally:

". . . findings shall be reversed only if found to be clearly erroneous, TR. 52(A), IC 1971, 34-5-1-1 and AP. Rule

15(M), Indiana Rules of Procedure. This Court must accept ultimate facts as stated by the trial court if there is evidence to sustain them. *State Board of Tax Commissioners* v. *Professional Photographers,* [148] Ind. App. [601], 268 N.E.2d 617 (1971) ; *State Board of Tax Commissioners* v. *Wright,* 139 Ind. App. 370, 215 N.E.2d 57; *Miller, etc.* v. *Ortman etc., et al.,* 235 Ind. 641, 136 N.E.2d 17 (1956)." 283 N.E.2d 566. *First National Bank of Mishawaka* v. *Kamm* (1972), 152 Ind. App. 353, 283 N.E.2d 563 at 566.

The trial court's findings pertinent to the issue of the adequacy of Economy's records are:

"9. That the circulars which were introduced into evidence as Defendant's Exhibit C (Circular ST-1), Defendant's Exhibit D (Circular ST-3) and Defendant's Exhibit B (Circular ST-8) are merely advisory circulars of the Defendant and are not duly promulgated rules and regulations of the Indiana Department of Revenue.

10. That there are no duly promulgated rules and regulations of the Indiana Department of Revenue involved in the facts in this case.

\* \* \*

17. The Court finds that the Plaintiff complied with the Indiana Gross Retail Tax Act of 1963 in the keeping of its records. The Plaintiff's records were sufficient under the Indiana Gross Income Tax Act as to cash sales at the stations and the bulk plant by the use of the tape showing total sales for the day, total exempt sales for the day at the Shelbyville service station and by the clipboard method of showing total sales made for the day, total exempt sales for the day and total sales tax collected for the day in the other service stations, and then taking said totals and transferring them to the books of the corporation for each day.

18. The Plaintiff did comply with Circulars St-1, St-3 and St-8 of the Indiana Department of Revenue in the reporting of its gross sales for the day, gross exempt sales for the day and gross sales tax collected for the day, even though said circulars were merely advisory and did not have the force of law as duly promulgated rules and regulations.

19. The Indiana Department of Revenue did not comply with Chapter 10 of the Acts of 1947, the same being Burns Indiana Statutes, Sections 64-2501 et seq. and more specifically Section 64-2508 adopting rules and regulations under the authority of the Gross Retail Tax Act.

20. The Plaintiff was in compliance with the Indiana Gross Retail Tax Act on all exemption certificates introduced in evidence and all of same are valid."

The two primary statutes referred to in the foregoing findings of fact are:

"It shall be the duty of every person subject to taxation hereunder to keep and preserve records of his gross income, and such other books or accounts as may be necessary to determine the amount of tax for which he is liable under the provisions of this act (6-2-1-1—6-2-1-53). It shall be the duty of every such person to keep and preserve such records for a period of three (3) years, and all such records shall be open for examination at any time, by the department of its duly authorized agents . . ." IC 1971, 6-2-1-31(a), Ind. Ann. Stat. § 64-2626(a) (Burns 1933).

And:

". . . All retail merchants, wholesalers, and manufacturers shall maintain *adequate* books of accounts and records so as to enable the department to audit the tax liability for each store or place of business." (Emphasis added). IC 1971, 6-2-1-51(b), Ind. Ann. Stat. § 64-2666(b) (Burns 1963).

Circular ST-1, referred to in the trial court's findings, states the Department's general policy on when to collect sales taxes as well as defining exemptions along with various forms to be used as exemption certificates. Circular ST-3 reads, in pertinent part:

". . . The Department of Revenue does not wish to change the bookkeeping system of any business. It is necessary, however, that all merchants keep adequate records and documents to prove that the total receipts and deductions reported to the Department are correct. These records must include an accurate and complete account of the total receipts from sales of taxable tangible personal property and must be supported by the normal books of accounts usually kept in the business, together with all checks, invoices, bills, and other documents . . ."

Circular ST-8, in part, reads:

". . . Accurate records must be kept to show your total sales, sales tax collected, the amount of nontaxable income, and sales to exempt customers . . ."

There can be little doubt that the Department's position as it deals with the adequacy of Economy's records would be strengthened had the foregoing circulars been elevated to the status of duly adopted and promulgated rules. Nevertheless the fact remains, as the trial court found, their status is only advisory and as such lose most of the force and effect they undoubtedly were intended to have.

When the applicable statutes are considered, the guideline for merchants boils down to "adequate" records necessary to determine tax liability, which are to be kept for three years. The trial court heard evidence from Economy's tax accountant, from which it could find that this rather general requirement had been complied with.

The Department has presented several policy arguments directed to the necessity of a taxpayer keeping complete records. In holding as we do on this issue there is no intent to deny the validity of these arguments, however, the Department has within its grasp the power to adopt and promulgate rules to properly accomplish the objective which it seeks.

We affirm the trial court on the second issue and reverse and remand on the first issue for any further action not inconsistent with this opinion.

Lowdermilk and Lybrook, JJ., concur.

## ON PETITION FOR REHEARING

ROBERTSON, C.J.—Economy, in its petition for rehearing, seeks clarification of that part of the opinion which remands this cause to the trial court.

This Court reversed only the following Findings of Fact.

"13. The gross Retail Tax Act (sales tax) of 1963 did not specifically include motor fuel and the same was not specifically included under said act until the acts of 1973, Public Law 49, p. 229, 237 at Section 5.

15. The Court finds that the Legislature did not intend to include motor fuel in the Grocery (sic) Retail Sales Tax Act of 1963."

All other Findings of Fact, Conclusions of Law and Court's Order, Decree and Judgment are affirmed. On remand the trial court should modify its Findings of Fact to delete said Findings of Fact 13 and 15 only. Economy's judgment should be paid according to law.

All other points raised by Economy are denied.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 321 N.E.2d 215.