Harry E. **EAKIN**, as Commissioner of Insurance of the State of Indiana and Indiana Patient's Compensation Fund, Defendant–Appellant,

v.

Janet **MITCHELL–LEECH**, Plaintiff–Appellee,

Kathryn R. **Voyles**, Plaintiff–Appellee,

Jeremy Abbott, Fred Abbott and Debra Abbott, Individually and as Parents and Natural Guardians of Jeremy Abbott, Plaintiffs–Appellees,

and

A.K. Rhodes, M.D., and Dearborn County Hospital (Non–Appealing Defendants Below).

No. 45A03–8807–CV–213.

Court of Appeals of Indiana, Third District.

Aug. 6, 1990.

Rehearing Denied Sept. 20, 1990.

---

Linley E. Pearson, Atty. Gen., Michael D. Connor, Alfred K.B. Tsang, Deputy Attys. Gen., Karen B. Neiswinger, Counsel, Dept. of Ins., Indianapolis, for defendant-appellant.

Delmar P. Kuchaes, Chudom & Meyer, Schererville, for plaintiff-appellee Janet Mitchell–Leach.

Rebecca G. Looney, New Albany, Donald R. Forrest, New Albany, for plaintiff-appellee Kathryn R. Voyles.

W. Brent Gill, Roger L. Perdieck, Pardieck & Gill, P.C., Seymour, Patrick W. Harrison, Beck & Harrison, Columbus, for plaintiffs-appellees Fred Abbott and Debra Abbott.

HOFFMAN, Presiding Judge.

The Commissioner of Insurance of the State of Indiana (hereinafter "Commissioner") appeals three trial court judgments, one awarding damages from the Indiana Patient's Compensation Fund (hereinafter "fund"), the second denying a motion to dismiss, and the third entitling the claimants to seek payment from the fund. Since they involve the same legal issue, the appeals have been consolidated. The Commissioner presents the following issues on appeal:

(1) whether a health care provider's agreement to make future periodic payments to a facial total of $100,000.00 satisfies the statutory requirements of the Medical Malpractice Act for access to the Patient's Compensation Fund in a case arising prior to June 1, 1985; and

(2) As to the individual case involving Janet Mitchell–Leech, the Commissioner appeals whether the trial court's award of damages is excessive and not supported by evidence.

The facts relevant to this appeal disclose that in April 1979, Janet Mitchell–Leech filed a six-count proposed complaint against Dr. Chester Kmak for medical malpractice. On October 16, 1987, Mitchell–Leech signed a settlement agreement with Dr. Kmak's insurer. The agreement provided for immediate payment of $10,000.00 and payment to Janet or her estate of $90,000.00 on October 19, 2033. On October 17, 1987, Mitchell–Leech filed her petition seeking excess damages from the fund in the Lake Circuit Court. On March 23, 1988, the court found in favor of Mitchell–Leech and awarded her $175,000.00 from the fund.

Kathryn R. Voyles filed a proposed medical malpractice complaint against Dr. R.H. Lanham, Jr.[1] On February 2, 1988, Voyles settled her claim with Dr. Lanham. Their agreement provided for an immediate payment of $10,000.00, periodic payments of $2,500.00 for nine consecutive years beginning in November 1988 and a final payment of $67,500.00 in 1997. On February 19, 1988, Voyles filed her petition for payment of damages from the fund in Clark Superior Court. The Commissioner moved to dismiss on August 1, 1988, and the trial court denied the motion. On November 28, 1988, the court found in Voyles' favor and awarded her $400,000.00 from the fund.

Jeremy Abbott and his parents, Fred and Debra Abbott, filed their proposed complaint against Dr. A.K. Rhodes on December 9, 1982. On January 20, 1989, the Abbotts filed their petition in the Ripley Circuit Court seeking both approval of the settlement agreement and a determination that they could proceed against the fund for excess damages. The tendered agreement provided that the health care provider's insurer would pay a lump sum of $100,000.00 on December 13, 1998. On March 14, 1989, the trial court approved the settlement agreement and found that the Abbotts were entitled to petition the fund for any damages in excess of $100,-000.00.

■ As a preliminary matter, Mitchell–Leech has moved to dismiss the appeal in her case. She argues that the Court of Appeals lacks subject-matter jurisdiction because the medical malpractice statute provides that any settlement approved by the court shall not be appealed. IND. CODE § 16–9.5–4–3(6) (1988 Ed.). The Commissioner is not appealing the settlement between Mitchell–Leech and Dr. Kmak's insurer. He is instead appealing the trial court's judgment that the settlement met the statutory requirements for access to the fund. With regard to the amount to be paid from the fund, there has been no settlement because the Commis-

---

1. It appears the complaint was filed in 1981 or 1982. The record is silent as to the exact date.

Voyles' brief states that the proposed complaint was filed before June 1, 1985.

sioner contends that Mitchell–Leech's settlement with the health care provider has not met the statutory requirements. A judgment of the court fixing damages is appealable. *Id.* By contesting whether the court can assess damages at all, the Commissioner is contesting the court's damage award. Therefore, we deny Mitchell–Leech's motion to dismiss.

■ Voyles also moves to dismiss the appeal because, she alleges, the record of proceedings and Commissioner's brief fail to comply with the requirements of the Indiana Rules of Appellate Procedure. Without enumerating each allegation of error and deciding if in fact the allegations are true, we note that substantial compliance with the rules is not fatal to the appeal. *Stepp v. Employment Sec. Div. Review Bd.* (1988), Ind.App., 521 N.E.2d 350, 353. Moreover, incompleteness or inadequacy of the record does not mandate dismissal of the appeal. Ind. Appellate Rule 7.2(C). For purposes of the issues presented in this appeal, the Commissioner's brief substantially complies with the appellate rules, and the record of proceedings is not incomplete or inadequate so as to frustrate appellate review or require us to order the trial court to correct the record. Voyles' motion to dismiss is denied.

■ The Commissioner contends that because the health care providers have not paid the appellees $100,000.00, the trial court did not have subject-matter jurisdiction to determine the amount to be paid from the fund. The Commissioner characterizes the error as failure of subject-matter jurisdiction. Subject-matter jurisdiction is the power of courts to hear and determine cases of the general class to which the proceeding then before the court belongs. *Mishler v. County of Elkhart* (1989), Ind., 544 N.E.2d 149, 151. The trial courts in these three cases clearly had the power to determine whether the fund should pay the appellees' excess medical malpractice damages. The Commissioner's real question is whether the trial courts correctly determined that the parties had met the preliminary condition of payment

of $100,000.00. While Indiana courts have described such situations as presenting a question of jurisdiction of the particular case, *id.* at 152, the question actually presented in a direct appeal is whether the trial court had met the threshold requirements for proceeding against the fund. As a practical matter, either track of analysis achieves the same result; the judgment may be voidable on appeal if the party claiming the error properly raised it in the trial court. *Id.*

Once a claimant has filed a petition demanding compensation from the fund and seeking approval of an agreed settlement, the commissioner, if he does not agree to the settlement, may file written objections to the payment of the amount demanded. IND.CODE § 16–9.5–4–3(3) (1988 Ed.). In Abbott and Mitchell–Leech, the Commissioner filed written objections to the settlement. In Voyles, the Commissioner moved to dismiss, and in Mitchell–Leech the Commissioner also moved for summary judgment. In all three cases, the Commissioner asserted that the claimants had not satisfied the condition precedent to payment from the fund.

The Indiana Medical Malpractice Act limits a health care provider's liability to $100,000.00 per occurrence. IND.CODE § 16–9.5–2–2(b) (1988 Ed.). The act provides in relevant part:

"If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000), and claimant is demanding an amount in excess thereof, then the following procedure must be followed...."

IND.CODE § 16–9.5–4–3.

Once these threshold requirements are met, the court shall determine the amount for which the fund is liable. IND.CODE § 16–9.5–4–3(5).

Section 5 reads in part:

"If the commissioner, the health care provider, the insurer of the health care provider, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court, after hearing any relevant evi-

dence on the issue of claimant's damage, submitted by any of the parties described in this section, shall determine the amount of claimant's damages, if any, in excess of the one hundred thousand dollars ($100,000) already paid by the insurer of the health care provider."
*Id.*

The question, therefore, is whether the statute requires payment of $100,000.00 present value before a claimant may seek compensation from the fund.[2]

The Commissioner contends that the statute requires a present value of $100,000.00 before a claimant may seek compensation from the fund. The appellees argue that their structured settlements whereby part of the $100,000.00 payment was deferred over a period of years also satisfies the requirement of payment of policy limits.

It is unclear as to what type of "payment" fulfills the requirement of IND. CODE § 16–9.5–4–3. Since there are many different forms of payment, it is necessary to look at the interpretation given by the Department of Insurance.

As stated in 26 I.L.E. *Statutes* § 126 (1960):

"The court will consider the contemporaneous construction placed on a statute by officers or departments of the State charged with administering it where the words therein are of doubtful import or ambiguous, and, while such a construction is not controlling, it is influential and persuasive, and is entitled to great respect and weight, especially when it has been observed and acted on for a long period of time. In other words, in construing an ambiguous or doubtful statute, the contemporaneous construction of a statute by those charged with the administration of it, while not controlling, is entitled to great weight, and should not be interfered with unless there are very urgent and persuasive reasons for departing from it." *Id.*

The evidence revealed that the Commissioner and his staff have interpreted the

provisions of this statute to not require full payment of the present value of $100,-000.00. In fact approximately 76 cases were named in which the patient was allowed to gain access to the Patient's Compensation Fund without first obtaining a "present value" payment of $100,000.00. Furthermore, in 1986 a staff member with the Department of Insurance authored an article for the Indiana Continuing Legal Education Forum entitled "Handling Claims Made With the Indiana Patient's Compensation Fund." In this article she states that payment of policy limits can be made in several ways, including payment of $100,000.00 in a single lump sum on a deferred basis or in a series of period payments over a number of years. *Id.* It is obvious from the above evidence that the Commissioner and his staff have affirmatively interpreted the unclear language of the statute and that this interpretation does not require full present value payment of the policy limits.

It is interesting to note that the legislature did not set a present value threshold for a periodic payment settlement until 1985. Furthermore, the legislature did not amend IND.CODE § 16–9.5–4–3 to include the present value requirement, but added a new statute, IND.CODE § 16–9.5–2–2.2, while specifically stating that this new statute does not apply to medical malpractice claims initiated before June 1, 1985. Clearly the doctrine of legislative acquiescence should be applied to this case.

It has been held that when the legislature fails to change a statute administered by a state agency this can be interpreted as satisfaction with and acquiescence in the administrative construction. *Economy Oil Corp. v. Ind. Dept. Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215; 26 I.L.E. *Statutes* § 127 (1989 Supp.).

The court in *Baker v. Compton et al.* (1965), 247 Ind. 39, 211 N.E.2d 162, stated and applied this doctrine:

"We recognize the established authority that a long adhered to administrative interpretation dating from the legislative

**2.** In 1985 the legislature added provisions dealing with periodic payment agreements. *See*

IND.CODE § 16–9.5–2–2.1, –2.2, –2.3, and –2.4 (1988 Ed.).

enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts."

*Id.* at 42, 211 N.E.2d at 164.

The *Baker* court further noted that an incorrect interpretation would not be binding. *See also: State Bd. of Tax Com'rs v. Lodge No. 255* (1988), Ind., 521 N.E.2d 678.

The legislature did not change IND. CODE § 16–9.5–4–3 when it added IND. CODE § 16–9.5–2–2.2 but left it to govern all claims initiated prior to June 1, 1985. The long adhered to administrative interpretation of the statute by the Department of Insurance cannot be deemed erroneous since the language of the statute is unclear. Thus doctrine of legislative acquiescence is hereby applied and the trial court judgments allowing patients into the compensation fund are affirmed.

Finally, the Commissioner contends that the damage award of $175,000.00 to Janet Mitchell–Leech was excessive and not supported by the evidence.

■ An appeal of a damage award as excessive is governed by a strict standard of review. *Persinger v. Lucas* (1987), Ind. App., 512 N.E.2d 865, 868. This Court will neither reweigh the evidence nor judge the credibility of the witnesses and will consider only the evidence favorable to the award. *Id.* A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *Id.*

■ Two witnesses testified at trial on the issue of damages, Janet Mitchell–Leech and Dr. Matviuw. The following evidence was presented:

1) unnecessary castration at the age of 28 and therefore, the loss of the ability to bear children;

2) psychological problems caused by the loss of the female organs such as the loss in normal sex drive and the ability to sexually function;

3) premature menopause with increased risk of osteoporosis, cardiovascular disease, postural irregularities, bone fractures;

4) degeneration and deterioration of secondary sex characteristics;

5) deterioration of the vaginal lining to a present status of approximately a 60 to 70–year–old woman causing painful sexual relations;

6) scar tissue at the top of the vagina with fixation to the bladder due to the vesico-vaginal fistula sustained by claimant with a 20 to 25% shortening of the vagina and an enterocele, all of which would make sexual intercourse difficult, if not impossible;

7) permanent frequency of urination due to diminished bladder capacity;

8) emotional harm and mental anguish resulting from the permanent loss of child bearing ability;

9) severe menopausal symptoms as a result of an abrupt deprivation of estrogen and the inability to receive estrogen replacement therapy because of the contraindications of a familial history of cancer and the appearance of adverse symptoms after trial estrogen therapy;

10) physical pain and mental anguish which accompanied the unnecessary hysterectomy;

11) additional periods of hospitalization and surgical intervention for the repair of the vesico-vaginal fistula which resulted from the unnecessary hysterectomy;

12) physical pain and mental anguish as a result of the vesico-vaginal fistula and its repair;

13) painful sexual intercourse;

14) embarrassment from having to frequently urinate;

15) medical bills in the amount of $10,-675.74; and

16) lost income in the amount of $6,545.25.

The above evidence is sufficient to support the award.

Affirmed.

CHEZEM, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I respectfully dissent. The 1975 General Assembly enacted the Indiana Medical Malpractice Act, IC 16–9.5–1–1 et seq. The Act provided, *inter alia,* recovery limits against health care providers who elected to be covered. IC 16–9.5–2–2. It also sought to insure recoveries for the victims of malpractice from covered providers. The statutory scheme provided that each health care provider should be responsible for the first $100,000 of damages to an injured person and additional damages up to the maximum allowable recovery would then be paid from a patient's compensation fund established by the Act. IC 16–9.5–2–7, IC 16–9.5–4–1.

Concerning this procedure and access to the patient's compensation fund, IC 16–9.5–4–3 provides:

> If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of $100,000, and claimant is demanding an amount in excess thereof, then the following procedure must be followed....

Additionally, a subsection of the same provision, IC 16–9.5–4–3(5) states:

> If the commissioner ... and the claimant cannot agree on the amount ... to be paid out of the patient's compensation fund, then the court, after hearing any relevant evidence on the issue of claimant's damage, ... shall determine the amount of claimant's damages, if any, in excess of the one hundred thousand dollars [$100,000] *already paid* by the insurer of the health care provider.... (emphasis added)

It appears to me that when the precondition language of IC 16–9.5–4–3 is considered in context and in view of the clear legislative intent, the statute clearly and unambiguously requires that the health care provider or its insurer shall have paid the maximum $100,000 (present value) before access may be had to the fund. The common and ordinary meaning of payment is cash or its equivalent in full. Not, as in the case of Mitchell–Leech, payment of $10,000 and the promise to pay another $90,000 forty-six (46) years later in 2033.

There being no ambiguity, there is no room for administrative (mis)interpretation to have persuasive effect on the courts. Additionally, unlike the majority I consider the 1985 amendment to recognize structured settlements so long as a present value of $75,000 is achieved to be a legislative response permitting such agreements to permit access to the fund for the first time.

I would reverse all the decisions. In none of these cases did the claimant meet the condition to have access to the fund. To hold otherwise only rewards the insurers of the health care providers for refusing to meet their obligations.

I dissent.