Harry E. EAKIN, as Commissioner of Insurance of the State of Indiana and Indiana Patient's Compensation Fund, Defendant–Appellant,

v.

Carl REED, Plaintiff–Appellee.

No. 49A02–8906–CV–274.[1]

Court of Appeals of Indiana,
First District.

Feb. 28, 1991.

Linley E. Pearson, Atty. Gen., Michael D. Conner, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Patrick W. Harrison, Beck & Harrison, Columbus, Lance D. Cline, Townsend, Yosha & Cline, Indianapolis, for plaintiff-appellee.

BAKER, Judge.

The Commissioner of Insurance of the State of Indiana (the Commissioner), appeals the trial court's order which authorized plaintiff-appellee, Carl Reed (Reed), to receive $400,000 from the Patient's Compensation Fund (the Fund). While the Commissioner frames the issue in terms of whether the trial court had subject matter jurisdiction to entertain Reed's request for damages from the Fund, the issue is more properly stated as whether the trial court prematurely allowed Reed access to the Fund. We think it did and, therefore, reverse and remand with instructions.

FACTS

Reed was injured in an automobile accident. The attending paramedics transferred him to St. Francis Hospital where he was treated by Dr. Faris. After he was admitted to the hospital, he became a quadraplegic.

Reed sought damages from the hospital and Dr. Faris pursuant to the Indiana Medical Malpractice Act (the Act). He also brought a products liability claim against Ford Motor Company in federal court. Reed entered into a loan receipt agreement with the hospital and Dr. Faris in which the health care providers agreed to make a present payment of slightly more than $75,-000 toward a periodic payment plan totaling $101,000 in interest-free loans to Reed. The parties agreed that the payments

---

1. This case was reassigned to this office on January 2, 1991.

would satisfy any liability the health care providers had toward Reed. Reed further agreed to reimburse the health care providers for their payments if he was successful in his suit against Ford Motor Company.

Based on the loan receipt agreement, Reed sought excess damages from the Fund. The Commissioner appeals the trial court's determination that Reed met the statutory requirements to recover from the Fund.[2]

## DISCUSSION AND DECISION

The Commissioner challenges the subject matter jurisdiction of the trial court to entertain Reed's request for excess damages from the Fund. "Subject-matter jurisdiction is the power of courts to hear and determine cases of the general class to which the proceeding then before the court belongs." *Eakin v. Mitchell–Leech* (1990), Ind.App., 557 N.E.2d 1057, 1060, *trans. denied.* The trial court in this instance had the power to determine whether the Fund should compensate Reed. The real question is whether the required threshold conditions set forth in the Act were satisfied.

The threshold requirements are set forth in IND.CODE 16–9.5–4–3, which provides in relevant part:

> If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000), and claimant is demanding an amount in excess thereof, then the following procedure must be followed[.]

The Act was amended in 1985 to allow certain qualified periodic payment agreements to satisfy the $100,000 requirement. IND.CODE 16–9.5–2–2.2.[3] The point of contention in the present dispute is whether the loan receipt agreement between Reed and the health care providers constituted payment to settle the providers' liability. Reed argues it does because he received actual payment of the statutorily required $75,000. IND.CODE 16–9.5–2–2.-2(b).[4] The Commissioner argues it does not because the conditional nature of the payments may relieve the health care providers of their statutorily imposed financial obligation if Reed recovers from Ford Motor Company. We agree with the Commissioner.

This case calls upon us to interpret the meaning of "payment" in the statute. When interpreting a statute, a reviewing court's primary objective is to determine and effect legislative intent. *Spaulding v. International Bakers Serv., Inc.* (1990), Ind., 550 N.E.2d 307. "Consideration of the reasons and policy underlying a statute and of the goals sought to be achieved by the legislation is indispensable to our ascertainment of the legislature's intent." *Watkins v. Alvey* (1990), Ind.App., 549 N.E.2d 74, 76. When construing the statute, its objects, purposes, effect and consequences must be considered. *Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977. Words and phrases are given their plain, ordinary and usual meaning, unless a contrary purpose is clearly revealed by the statute itself. *Merit Bd. v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235.

The statutory scheme here is designed to make health care providers responsible for payment of the first $100,000 of a medical malpractice victim's damages. As noted by Judge Garrard in *Mitchell–Leech,* "the statute clearly and unambiguously requires that the health care provider or its insurer shall have paid the maximum $100,000 ... before access may be had to the fund." *Mitchell–Leech,* 557 N.E.2d at 1063 (Gar-

---

**2.** The Commissioner does not challenge the amount of damages approved by the trial court. Rather, the Commissioner stipulated that if this court determines Reed has satisfied the statutory prerequisites, he is entitled to $400,000 in excess damages from the Fund.

**3.** This amendment applies here because Reed initiated his medical malpractice claim by filing his proposed complaint after June 1, 1985. *See* 1985 Ind.Acts Pub.L. No. 179–1985 § 5.

**4.** It is on this basis that the present case differs from *Eakin v. Mitchell–Leech, supra.* In *Mitchell–Leech,* the issue was whether the present value of a periodic payment agreement satisfied the statutory prerequisites. Here, however, the present value of the periodic payment agreement is not in issue. Rather, the parties are disputing the conditional nature of the payments.

rard, J., dissenting). The statutory scheme attempts to balance the escalating costs of malpractice insurance with the realization that some incidents of malpractice produce devastating results, including astronomical medical bills. To effectuate this scheme, the legislature apportioned some of the financial responsibility to the health care providers and some of the financial responsibility to the Fund. The health care providers must satisfy their obligation before access to the Fund is allowed. IND.CODE 16-9.5-4-3. Such a scheme contemplates that the meaning of the word "payment" is the permanent transfer of money from the health care providers to the claimant. The transfer of money with conditions for repayment attached has the potential of allowing health care providers to escape their statutory obligation and of requiring the Fund to pay without any contribution from the health care providers. This is not the intent underlying the statute.

In the present case, the trial court prematurely allowed Reed access to the Fund because the health care providers did not irrevocably meet their statutory obligation. It is possible that at some future point, Reed will recover against Ford Motor Company. If so, the health care providers will be reimbursed for their payments which will relieve them of any financial responsibility. If the Fund is required to pay excess damages prior to the health care providers' permanent payment of its obligation, then the Fund could ultimately pay damages without any contribution from the health care providers. The statute does not allow payment by the Fund without payment by the health care providers. IND.CODE 16-9.5-4-3.

Reed points out quite persuasively that we should not aggravate his financial hardship by delaying his access to the Fund. While we sympathize with his position, we are constrained to honor the legislative intent behind the statute. The legislature intended for the health care providers' payments to be of a permanent nature before allowing a medical malpractice victim to proceed against the Fund. Payments of a

conditional nature do not comport with the legislative goals of the statute.

Accordingly, the trial court is reversed and this cause remanded with instructions to hold Reed's complaint for excess damages in abeyance until the results of his claim against Ford Motor Company are determined or until the health care providers' payments are irrevocable.

ROBERTSON and BUCHANAN, JJ., concur.