Terry SMITH, Appellant–Plaintiff,

v.

Ronald J. PANCNER, M.D., Richard F. Thompson, Jr., M.D., Pancner Psychiatric Services, Summit Psychiatric Services, P.C., and the Insurance Commissioner of the State of Indiana, Appellees–Defendants.

No. 49A05–9505–CV–221.

Court of Appeals of Indiana.

April 10, 1996.

Mark S. Pantello, Benson, Pantello, Morris & James, Fort Wayne, for appellant.

Matthew W. Conner, Indiana Department of Insurance, Indianapolis, for appellee.

### OPINION

SULLIVAN, Judge.

Terry Smith appeals from the trial court's grant of summary judgment in favor of the Insurance Commissioner of the State of Indiana. We affirm.

Between June of 1990 and October of 1990, Ronald Pancner, M.D. and Richard Thompson, M.D. provided psychiatric care and treatment to Terry Smith. Smith filed a proposed medical malpractice claim with the Indiana Department of Insurance against Pancner, Thompson and Pancner Psychiatric Services (PPS). A medical re-

view panel issued a unanimous opinion that Pancner, Thompson and PPS were negligent in their care and treatment of Smith and that their negligence was a factor in his resulting damages. Smith thereafter filed a complaint for damages in the Allen Superior Court and eight days prior to trial, entered into a settlement of his claim. The settlement agreement provided that Summit Psychiatric Services, P.C. (Summit), be added as a defendant in the action and that the other defendants, Pancner, Thompson and PPS, would be dismissed with prejudice. In exchange, Smith received $50,000 in cash plus an annuity costing in excess of $25,001.[1] Smith thereafter filed a petition, in the Marion County Circuit Court, for payment from the Patient's Compensation Fund, pursuant to I.C. 27–12–15–3 (Burns Code Ed.Repl. 1994).

The Insurance Commissioner filed a motion for summary judgment on the basis that Summit was not a qualified health care provider under the Indiana Medical Malpractice Act and therefore Smith was not entitled to seek payment from the Patient's Compensation Fund. Smith filed a response, with affidavits and exhibits, requesting denial of the Commissioner's motion for summary judgment and granting of Smith's own motion for summary judgment. The trial court granted summary judgment for the Insurance Commissioner.

■ In Indiana, a medical malpractice claim against a qualified health care provider is governed by the Indiana Medical Malpractice Act, Ind.Code 27–12–1–1 to 27–12–18–2 (Burns Code Ed.Repl.1994). A health care provider has the option of becoming "qualified" under the Act, and thereby receiving the benefit of the Act, or choosing not to "qualify". To qualify under the Act, a health care provider or the health care provider's insurance carrier must file proof of financial responsibility with the Insurance Commissioner and pay a surcharge. I.C. 27–12–3–2. In exchange, the health care provider's liabil-

ity is limited to $100,000 per occurrence of malpractice. I.C. 27–12–14–3. Victims of medical malpractice committed by qualified health care providers whose damages exceed $100,000 may petition the Patient's Compensation Fund for payment of their excess damages, with a current cap of $750,000. I.C. 27–12–14–3. Health care providers who choose not to qualify fall outside the coverage of the Act. I.C. 27–12–3–1. Summit did not file proof of financial responsibility with the Insurance Commissioner or pay a surcharge. Thus, Summit was not a qualified health care provider under the Act.

■ Smith acknowledges that Summit was the entity identified in the Settlement Agreement, and that he knew Summit was not a qualified health care provider. He maintains that access to the fund is nevertheless available because the settlement was made on behalf of Pancner and Thompson, both of whom were qualified health care providers. The Commissioner contends that because the written settlement agreement was between Summit and Smith, it is conclusive evidence that the settlement was with a non-qualified health care provider.

Indiana Code 27–12–15–3 contains the statutory prerequisites to admission to the Patient's Compensation Fund. *Eakin v. Reed* (1991) Ind.App., 567 N.E.2d 148, 149, *trans. denied.* The first sentence of I.C. 27–12–15–3 provides:

> If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000), and the claimant is demanding an amount in excess of that amount, the following procedure must be followed:

Under the circumstances of this case, access to the Patient's Compensation Fund depends upon a settlement with a qualified health care provider. The only evidence of any settlement in this case is the settlement agreement entered into between Summit[2]

---

1. A structured settlement in this amount is the equivalent of a payment of $100,000 for purposes of access to the Patient's Compensation Fund. I.C. 27–12–14–4(b) (Burns Code Ed.Repl.1994).

2. Summit was incorporated in July of 1990, during Smith's treatment, with Pancner and Thompson as 50/50 owners. It appears that the unincorporated entity, PPS, merged into Summit. At the time of settlement, Summit was wholly

and Smith.[3] There were no other parties to the agreement. Therefore, there were no other parties to the settlement, even though the agreement with Summit contemplated, and resulted in, dismissal as to all defendants.

Pancner and Thompson, the only qualified health care providers, were not parties to the settlement agreement. They did not enter into any agreement. They did not admit liability. They did not settle any claim of liability.[4]

The position taken in the dissenting opinion here, presupposes that the equivalent of the $100,000 settlement payment was made on behalf of one or more qualified health care providers. It concludes that the payment was made solely on behalf of Pancner, Thompson and PPS. This ignores that the settlement proposal letter was sent on behalf of Summit, that Summit was the only party to the actual settlement agreement, and that the Medical Protective Company, the insurer which made the payment, insured Summit. Even under the scenario most favorable to the reasoning of the dissent, the $100,000 equivalent was paid on behalf of four entities, only two of whom were qualified health care providers. The payment amount therefore does not fall within the provisions of I.C. 27–12–15–3.[5] Because at least a portion of the settlement payment was on behalf of Summit, any payment amount attributable to Pancner and/or Thompson would not reach the $100,000 threshold requirement or its equivalent.

The trial court properly entered summary judgment in favor of the Insurance Commissioner. That judgment is affirmed.

SHARPNACK, C.J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

The majority takes the position that Smith is precluded from accessing the Patient's Compensation Fund because a qualified health care provider was not a signatory to the settlement agreement. Because I do not find Indiana Code section 27–12–15–3 (Burns 1994) that limiting, I dissent.

The statutory prerequisites for admission to the Patient's Compensation Fund are found in I.C. 27–12–15–3. *Eakin v. Reed,* 567 N.E.2d 148, 149 (Ind.Ct.App.1991), *trans. denied.* The first sentence of I.C. 27–12–15–3 provides:

If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000), and the claimant is demanding an amount in excess of that amount, the following procedure must be followed:

\*     \*     \*     \*     \*     \*

Indiana's Medical Malpractice Act is in derogation of common law. *Methodist Hospital of Indiana, Inc. v. Ray,* 551 N.E.2d 463 (Ind.Ct.App.1990), *trans. granted and opinion adopted,* 558 N.E.2d 829 (Ind.1990). As such, it must be strictly construed against limitations on a claimant's right to bring suit. *Tittle v. Mahan,* 582 N.E.2d 796, 800 (Ind. 1991). When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and

---

owned by Pancner. Pancner, Thompson, PPS and Summit wee all represented by the same attorney, John M. Clifton, Jr., and insured by The Medical Protective Company.

3. During oral argument before this court, it was made clear that at the time of settlement, Smith knew that Summit was not a qualified health care provider and that this fact would be an issue with respect to any claim against the Patient's Compensation Fund.

4. The fact that Pancner's attorney, who also represented Summit, wrote a letter on August 8, 1994, *on behalf of Summit,* setting forth a pro-

posal for settlement does not alter the fact that Pancner was not a party to the settlement itself.

5. Access to the Patient's Compensation Fund requires that "a health care provider or its insurer has agreed to settle liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000)...." I.C. 27–12–15–3. The statutory provision is clearly focused upon payment of the policy limits with respect to a single health care provider. It does not contemplate settlement in an aggregate sum of $100,000 for multiple health care providers.

purpose of the act. *Detterline v. Bonaventura,* 465 N.E.2d 215, 218 (Ind.Ct.App.1984), *reh'g denied, trans. denied.* We must ascertain and implement the legislature's intent by giving effect to the plain and ordinary meaning of the language used. *Whitacre v. State,* 619 N.E.2d 605 (Ind.Ct.App.1993), *opinion adopted,* 629 N.E.2d 1236 (Ind.1994). Where the legislature has not defined a word, we must attribute common and ordinary meaning to the word. *Tucker v. State,* 646 N.E.2d 972 (Ind.Ct.App.1995).

The "agreed to settle its liability" language of I.C. 27–12–15–3 is not defined in the Medical Malpractice Act. By its common and ordinary meaning, it does not require a written settlement agreement between a qualified health care provider and a victim of malpractice in order to access the fund. To the contrary, it merely requires proof of an agreement to settle liability. The means by which a party provides that proof is left open.

Thus, the question is whether Smith proved that a qualified health care provider "agreed to settle its liability." A look at the circumstances surrounding the offer of settlement and the execution of the settlement agreement demonstrates that Pancner, Thompson and PPS agreed to settle their liability with Smith. Because Pancner and Thompson were both qualified health care providers, doing business as PPS, Smith has met the statutory qualifications for access to the fund.

The offer of settlement was made eight days prior to trial. A medical review panel had issued a unanimous opinion that Pancner, Thompson and PPS failed to comply with the appropriate standard of care and that their conduct was a factor in Smith's damages. Pancner, Thompson and PPS were all represented by the same attorney, John M. Clifton, Jr. All three were insured by the Medical Protective Company. The settlement offer was made by attorney Clifton. The offer stated that it was made by Summit on the condition that Summit be added as a defendant to the litigation and Pancner, Thompson and PPS be dismissed from the litigation, with prejudice.

The Stipulation of Additional Party Defendant provides that Pancner, Thompson and PPS stipulate and agree to Summit's addition as a defendant. The Stipulation of Dismissal of Certain Defendants, filed the same day as the Stipulation of Additional Party Defendant, is worded the same way. The dismissal and the agreement to pay were simultaneous, because without compliance with all the conditions, there would not have been a settlement.

It was Pancner and Thompson, and their d/b/a PPS, who rendered health care to Smith. They were the only entities with any liability in this case. Their insurance company, Medical Protective, paid the settlement. Even though Medical Protective also insured Summit, Medical Protective was under no obligation to pay on Summit's behalf because the statute of limitation time had expired.

Pancner and Thompson were both qualified health care providers and PPS was merely a name under which they did business. While the offer stated it was made on behalf of Summit, the conditions contained in that offer, combined with the manner in which they were accomplished are sufficient to establish that regardless of the signatories to the settlement agreement, it was Pancner, Thompson and PPS who agreed to settle their liability to Smith. The payment to Smith was made on their behalf.

Such a result does not defeat the spirit and purpose of the Medical Malpractice Act. As noted in *Eakin,* 567 N.E.2d at 150:

> The statutory scheme attempts to balance the escalating costs of malpractice insurance with the realization that some incidents of malpractice produce devastating results, including astronomical medical bills. To effectuate this scheme, the legislature apportioned some of the financial responsibility to the health care providers and some of the financial responsibility to the fund. The health care providers must satisfy their obligation before access to the fund is allowed.

Pancner and Thompson were qualified health care providers under the Medical Malpractice Act, meaning they had provided proof of financial responsibility and paid a surcharge to the fund. The settlement was the equiva-

lent of $100,000, the maximum liability for qualified health care providers for a single injury.[6]  Because Pancner and Thompson were qualified health care providers and satisfied their obligation to the fund, the purpose of the Act is served.

---

**6.**  The majority also contends that the $100,000 payment was insufficient to access the Patient's Compensation Fund because the payment was made on behalf of more than one qualified health care provider.  However, the majority cites no authority for its contention and I find no such limitation in the statute.