The INSURANCE COMMISSIONER
OF the STATE OF INDIANA,
Appellant–Defendant,

v.

Terry SMITH, Appellee–Plaintiff.

No. 49A04–9901–CV–46.

Court of Appeals of Indiana.

Aug. 25, 1999.

Robert G. Weddle, Matthew W. Conner, Tabbert, Hahn, Earnest & Weddle, P.C., Indianapolis, Indiana, Attorneys for Appellant.

Ronald E. James, Jack E. Morris, Benson, Pantello, Morris, James & Logan, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

The Insurance Commissioner of Indiana ("Commissioner") brings this interlocutory appeal from the grant of Terry Smith's motion for partial summary judgment and the denial of the Commissioner's motion for summary judgment. The Commissioner raises two issues on appeal. We address one dispositive issue, which we restate as: whether a genuine issue of material fact exists regarding whether a qualified health care provider agreed to settle its liability to Smith.

We reverse and remand.

Smith filed a petition for payment from the Patient's Compensation Fund ("the Fund") following the settlement of the medical malpractice claim he filed against Dr. Ronald Pancner, Dr. Richard Thompson, and Pancner Psychiatric Services ("PPS"). Where a medical malpractice claim is resolved via settlement, a claimant is entitled to access the Fund only where "a [qualified] health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000)...." IND.CODE § 27–12–15–3 (1993); *Smith v. Pancner*, 679 N.E.2d 893, 895 (Ind.1997) ("*Smith II* "). Smith's written settlement agreement was with Summit Psychiatric Services, P.C. ("Summit") and its insurer, the Medical Protective Company ("MPC"). Summit was a nonqualified health care provider. The first time Smith's claim was before the trial court, the court granted summary judgment to the Commissioner. The Commissioner had argued that Smith was not entitled to access the Fund because his settlement was with a nonqualified health care provider. A majority of this court affirmed the trial court. *Smith v. Pancner*, 663 N.E.2d 1162 (Ind.Ct.App.1996) ("*Smith I* ").

The Indiana Supreme Court granted transfer and reversed the trial court's grant of summary judgment. *Smith II*, 679 N.E.2d at 898. Our supreme court concluded that a genuine issue of material fact existed regarding whether a qualified health care provider or its insurer had agreed to settle Smith's claim. The following facts, as recited by our supreme court, weighed in its decision.

Smith filed a proposed medical malpractice claim with the Indiana Department of Insurance against the two doctors and Pancner Psychiatric Services (PPS). PPS is described as a "d/b/a" or assumed business name used by the two at the time Smith's treatment started. In due course a medical review panel unanimously opined that the doctors were negligent in their treatment of Smith and that the negligence was a factor in Smith's damages. Smith then filed suit against the two doctors and PPS and shortly before trial settled his claim.

During the four month course of Smith's treatment the two doctors had incorporated their practices as Summit Psychiatric Services, P.C., with each owning 50% of Summit's stock. Also, before the settlement, Dr. Thompson left the practice leaving Dr. Pancner as the sole shareholder and president of Summit. The settlement was the result of a negotiation initiated by a proposal by Summit's lawyer, who also represented the doctors and PPS. By letter to Smith's counsel ostensibly on behalf of Summit, which theretofore had no relation to the suit, he proposed that the three defendants would be dismissed and Summit would become a defendant and settle the claim. Ultimately a written agreement was entered into that recited that it was "by and among Smith, Summit and the Medical Protective Company." MPC had insured both doctors, PPS, and Summit against malpractice liability under four separate policies for the period in question. The doctors and PPS were not parties to the written settlement agreement. Summit and PPS were not qualified health providers. Only the two doctors were qualified.

*Id.* at 894–95 (footnotes omitted).[1]

In concluding that a genuine issue of material fact existed regarding whether a quali-

---

1. Our supreme court's statement of facts indicates that PPS was insured by MPC during the relevant period. The parties' stipulated facts indicate that PPS was not insured. However, this

fied health care provider or its insurer had agreed to settle its liability, our supreme court reasoned as follows:

> The proposal to substitute Summit was advanced by the doctors' attorney, who also represented Summit in the transaction. It purported to be made on behalf of Summit, but also required the dismissal of the claims against the doctors and effected a release of those claims as well. The majority in the Court of Appeals concluded that the literal terms of the document controlled and ruled that the payment was on behalf of Summit, a nonqualified provider. However, we find no requirement that the parties cannot "agree to settle" orally or only partially in writing. It is obvious what the arrangement was. The written agreement called for payment by the insurer to release claims against all four. The documentation supplied by Smith supports an inference sufficient to defeat summary judgment that (1) the arrangement met the requirement of [IC 27–12–15–3] that a qualified provider (Dr. Pancner) or its insurer (MPC) "has agreed to settle" and (2) one of the "liabilities" settled was that of a Dr. Pancner, a qualified health care provider.

*Id.* at 895–96 (footnotes omitted).

In his motion for partial summary judgment on remand, Smith essentially designated the same evidence that was before our supreme court in *Smith II.* In addition, Smith designated the deposition testimony of John Clifton, Jr. ("Clifton"), the attorney for Summit, PPS, Pancner, Thompson, and MPC, wherein he stated, among other things, that "Summit was used as a vehicle to effectuate the settlement." As our supreme court stated in *Smith II,* this evidence was sufficient to raise an inference that Dr. Pancner, a qualified health care provider, or his insurer had agreed to settle his liability.

In response to Smith's motion and in support of her own motion for summary judgment, the Commissioner designated the following evidence. Clifton testified in his deposition that he met with a member of the medical review panel that considered Smith's claim. Clifton concluded from that

conversation that Summit should have been the party to settle with Smith because employee psychologists and counselors of Summit were just as responsible as Pancner and Thompson for the substandard care given to Smith. Clifton testified regarding his belief that Smith could have added Summit as a party pursuant to Ind. Trial Rule 15(C).

Clifton also testified that he had received written statements from Pancner and Thompson that they would not settle. Pancner's and Thompson's insurance policies with MPC indicated that their liability could not be settled without their consent. Clifton testified that at one point he advised Smith's attorney that he could not settle because he did not have consent.

■ The trial court granted Smith's motion for partial summary judgment and denied the Commissioner's motion for summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theo-

---

particular fact was not important to the court's resolution of the case.

ry supported by the designated materials. T.R. 56(C).

██ The designated evidence in this case is essentially undisputed. However, this evidence leads to conflicting inferences regarding whether a qualified health care provider or its insurer agreed to settle its liability. As our supreme court observed in *Smith II*, the evidence designated by Smith leads to the inference that Pancner, a qualified health care provider, or MPC, his insurer, agreed to settle Pancner's liability. Summit, a corporation controlled by Pancner, agreed to be added as a defendant to Smith's lawsuit and to settle with Smith. At the time of its offer to settle, Summit was not a defendant in Smith's lawsuit. As a condition of its offer, Summit required Smith to agree to the dismissal of Pancner, Thompson, and PPS.

A trier of fact could infer that Summit had no reason, apart from its relationship to Pancner, to agree to be added as a defendant and to require the dismissal of Smith's claims against Pancner, Thompson, and PPS. Accordingly, one could infer that Pancner was an integral part of the settlement offer to Smith and that Pancner in fact agreed to settle his own liability via the "vehicle" of his corporation, Summit.

On the other hand, a conflicting inference is possible from the designated evidence. The written settlement agreement was between Smith, Summit, a nonqualified health care provider, and MPC, Summit's insurer. The settlement offer purported to be made on behalf of Summit alone. Clifton, the attorney for the defendants and their insurance carrier, testified that he believed Summit was the appropriate party to settle because of the participation of Summit psychologists and counselors in the substandard care of Smith. Moreover, Clifton testified to his belief that Summit could have been added as a defendant by Smith regardless of Summit's agreement to become a defendant. Further-

more, Clifton testified that both Pancner and Thompson, the only qualified health care providers, specifically informed him that they did not want to settle, and Clifton informed Smith's attorney that he lacked consent to settle.

One could infer from this evidence that Pancner and Thompson in fact did not agree to settle their liabilities. Instead, it could be inferred that Summit, realizing that it might be added as a party, agreed to settle its own liability that resulted from its employees' actions. In turn, one could infer that Smith agreed to release his claims against Pancner, Thompson, and PPS, without their agreement to settle, in exchange for the financial benefits of his settlement with Summit.

██ The designated evidence does not conclusively establish that Pancner or his insurer agreed to settle his liability; it merely supports such an inference. Nor does the designated evidence conclusively establish that Pancner or his insurer did not agree to settle his liability. If conflicting inferences may be derived from undisputed evidence, a party is not entitled to summary judgment. *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind.1996). Accordingly, the trial court erred by granting partial summary judgment in favor of Smith, but it did not err in denying the Commissioner's motion. On remand, the case must proceed to trial so that the fact-finder may resolve these conflicting inferences.

Reversed and remanded.[2]

BAILEY, J., and FRIEDLANDER, J., concur.

---

2. On remand, the trial court must also determine whether the settlement payment was attributable in a sufficient amount to a qualified provider. *See Smith II*, 679 N.E.2d at 896–97. Smith raised this issue in his motion for partial summary judgment, and the trial court granted his motion. However, we have reversed the partial

summary judgment on other grounds. Too, the Commissioner did not request summary judgment on this basis at the trial court level. Accordingly, we need not address the issue here. Moreover, since resolution of this issue is affected by the fact-finder's determination of whether a qualified health care provider was party to the

settlement with Smith, we deem it wise to permit the trial court to resolve the matter in the first instance.