**PATIENT'S COMPENSATION FUND,**
Appellant–Defendant,

v.

**Robert E. HICKLIN, Jr., as Personal Representative of the Estate of Millard H. Black, Deceased, Appellee–Plaintiff.**

No. 82A01–0406–CV–249.

Court of Appeals of Indiana.

March 8, 2005.

Matthew W. Conner, Tabbert Hahn Earnest & Weddle, Indianapolis, IN, Attorney for Appellant.

George C. Barnett, Jr., Douglas K. Briody, Noffsinger Barnett, Evansville, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The Patient's Compensation Fund ("the Fund") brings this certified interlocutory appeal from the trial court's denial of its motion to dismiss a claim for excess damages under the Medical Malpractice Act ("the Act") brought by Robert E. Hicklin, Jr., as Personal Representative of the Estate of Millard H. Black, Deceased ("the Estate"). The Fund presents a single issue for our review, namely, whether the Estate satisfied the statutory prerequisites to seeking damages from the Fund.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On November 28, 2000, the Estate filed a proposed complaint for damages against WBH Evansville, Inc., d/b/a Welborn Baptist Hospital ("WBH") with the Indiana Department of Insurance ("IDOI"). In its complaint, the Estate alleged that WBH was negligent in its medical treatment of Black in 1998. On December 15, 2000, the Estate filed a complaint against WBH with the United States District Court for the Southern District of Indiana alleging that WBH violated the Emergency Medical Treatment and Active Labor Act ("EMTA-LA"). *See* 42 U.S.C. § 1395dd.

On May 15, 2002, the Estate and WBH executed a settlement agreement regard-

ing both complaints whereby WBH would pay the Estate $75,000 upon execution of the agreement and $1 one week later. On December 9, 2003, the Estate filed a petition against the Fund seeking payment of its damages in excess of the amount paid by WBH. The Fund filed a motion to dismiss that petition under Indiana Trial Rule 12(B)(1) alleging that the Estate had not satisfied the statutory prerequisites to petitioning for excess damages under the Act. Following a hearing, the trial court denied that motion. The Fund moved the trial court to certify the issue for interlocutory appeal, and the court granted that motion. This appeal ensued.

## DISCUSSION AND DECISION

■■■ The Fund contends that the trial court erred when it denied its motion to dismiss. In ruling on a motion for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1), the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support. *GKN Co. v. Magness,* 744 N.E.2d 397, 400 (Ind.2001). In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.*

Under the Act, a medical malpractice plaintiff's ("claimant") damages are limited. At all times relevant to the instant action, a health care provider was liable for up to $100,000 per occurrence, and a claimant could seek up to $650,000 in excess damages from the Fund. *See* Ind.Code § 34–18–14–3 (formerly Ind.Code § 27–12–14–3).[1] A health care provider may discharge its liability by setting up a periodic payments agreement, which is defined as follows:

[A] contract between a health care provider (or its insurer) and the patient (or the patient's estate), under which the health care provider is relieved from possible liability in consideration of:

(1) a present payment of money to the patient (or the patient's estate); and

(2) one (1) or more payments to the patient (or the patient's estate) in the future;

whether or not some or all of the payments are contingent upon the patient's survival to the proposed date of payment.

Ind.Code § 34–18–14–2 (formerly Ind. Code § 27–12–14–2). But Indiana Code Section 34–18–14–4(b) ("Section 4(b)") provides further:

If the health care provider agrees to discharge its possible liability to the patient through a periodic payments agreement, the amount of the patient's recovery from a health care provider in a case under this subsection is the amount of any immediate payment made by the health care provider or the health care provider's insurer to the patient, plus the cost of the periodic payments agreement to the health care provider or the health care provider's insurer. For the purpose of determining the limitations on recovery stated in section 3(b) and 3(d) of this chapter and for the purpose of determining the question under IC 34–18–15–3 of whether the health care provider or the health care provider's insurer has agreed to settle its liability by payment of its policy limits, the sum of:

(1) the present payment of money to the patient (or the patient's estate) by the

---

**1.** The current version of the statute limits a claimant's total recovery to $1,250,000, of which a health care provider is liable for up to $250,000. For ease of discussion, we will refer to the current citations to the relevant statutes, substituting the old recovery limitations for the new ones.

health care provider (or the health care provider's insurer); plus

(2) the cost of the periodic payments agreement expended by the health care provider (or the health care provider's insurer);

must exceed [seventy-five thousand dollars ($75,000) ].[2]

The "cost of the periodic payments agreement" is defined as "the amount expended by the health care provider ... at the time the periodic payments agreement is made, to obtain the commitment from a third party to make available money for use as future payment, the total of which may exceed the limits provided in section 3 of this chapter." Ind.Code § 34–18–14–1.

Once a claimant has settled with a health care provider, he can seek additional damages from the Fund. A claimant cannot access the Fund, however, until the health care provider has either paid the claimant $100,000 or has made a present payment to the claimant and purchased a periodic payments agreement at a total cost of more than $75,000. Ind.Code § 34–18–15–3 (formerly Ind.Code § 27–12–15–3). A claimant cannot otherwise access the Fund. *See Eakin v. Reed,* 567 N.E.2d 148, 149–50 (Ind.Ct.App.1991), *trans. denied.*

In this case, we are presented with an issue of first impression, namely, whether an agreement to make an immediate payment of $75,000 plus a future payment of $1 directly to the claimant, for a total recovery of $75,001, satisfies the requirements under Section 4(b). The Fund contends, simply, that there is no periodic payments agreement in this case. The Estate maintains that its agreement with WBH constitutes such an agreement under the terms of the Act. The agreement between WBH and the Estate provides in relevant part as follows:

> WBH agrees to pay to Hicklin, as the Personal Representative of the Estate of Black:
>
> (a) For the settlement of the EMTALA Complaint, the sum of Seventy–Five Thousand Dollars ($75,000.00), to be paid immediately upon the execution of this Settlement Agreement; and
>
> (b) For settlement of the Malpractice Complaint, the sum of One Dollar ($1.00), payable one week following the said Seventy–Five Thousand Dollar ($75,000.00) payment made in settlement of the EMTALA Complaint;
>
> for combined periodic payments from WBH to Hicklin, as Personal Representative of the Estate of Black, totaling Seventy–Five Thousand One Dollars ($75,001.00).

Appellant's App. at 21. In short, WBH made two payments directly to the Estate, over the course of one week, totaling $75,001.

Again, at all times relevant to this matter, a health care provider was liable for the first $100,000 of any damages award arising from medical malpractice. In order for a health care provider to discharge its liability for less than $100,000, under Section 4(b), the provider must have purchased a periodic payments agreement *through a third party,* and the sum of the immediate payment to the claimant plus the cost of the periodic payments agreement must have exceeded $75,000.

 Here, while WBH made an immediate payment of $75,000 to the Estate, the second payment of $1 was also paid directly to the Estate instead of funding

**2.** Indiana Code Section 34–18–14–4 was amended in 1998 and now requires that the sum of (1) and (2) must exceed $187,000, because the cap on a health care provider's liability has been increased from $100,000 to $250,000.

the "cost of [a] periodic payments agreement." Thus, the two payments could not be aggregated, as required by the plain terms of Section 4(b). There is no evidence that WBH "obtained a commitment from a third party to make available money for use as future payment[,]" which is the essence of a periodic payments agreement.[3] *See* I.C. § 34–18–14–1. Indeed, as one author has observed, "the future payments *cannot be paid from the funds of the health care provider* ..., but must instead be derived from the funds of a third party whose commitment to make the future payments is purchased by the health care provider[.]" Robin B. Stickney, *1985 Amendments to the Indiana Medical Malpractice Act,* 19 IND. L.REV. 403, 406 (1986) (emphasis added).

In *Eakin,* 567 N.E.2d at 148, we addressed the issue of whether a periodic payments agreement between a health care provider and a claimant satisfied the statutory prerequisite for access to the

Fund, albeit in a different context.[4] We observed as follows:

> When interpreting a statute, a reviewing court's primary objective is to determine and effect legislative intent. "Consideration of the reasons and policy underlying a statute and of the goals sought to be achieved by the legislation is indispensable to our ascertainment of the legislature's intent." When construing the statute, its objects, purposes, effect and consequences must be considered. Words and phrases are given their plain, ordinary and usual meaning, unless a contrary purpose is clearly revealed by the statute itself.

> The statutory scheme here is designed to make health care providers responsible for payment of the first $100,000 of a medical malpractice victim's damages. As noted by Judge Garrard in [*Eakin v. Mitchell–Leech,* 557 N.E.2d 1057 (Ind. Ct.App.1990)], "the statute clearly and unambiguously requires that the health care provider or its insurer shall have

---

3. The Estate contends, for the first time on appeal, that because the two payments were made by checks, a "third party," namely, a bank, was involved in making the money available for use as future payment. *See* Brief of Appellee at 4–5. We agree with the Fund that this contention "stretches the meaning of the statutory definition [of a periodic payments agreement] beyond its breaking point." Reply Brief at 3. A depositor and its bank have a debtor-creditor relationship. The payments by check were made from WBH's funds on deposit with its bank. The Estate, not the bank, was the third party in the transaction.

In addition, the Estate contends that the Fund has waived the issue that "the Settlement Agreement between [WBH] and Hicklin should fail for want of a third party's involvement." Brief of Appellee at 6. The Estate maintains that the Fund never argued that specific point to the trial court. But our review of the record indicates that the Fund consistently argued that WBH's failure to "purchase ... a structured settlement agreement" was one factor in the Estate's inability

to access the Fund. Transcript at 11. While the Estate is correct that the Fund focused more on the failure of the settlement agreement to pay out $100,000 over time in its arguments to the trial court, whether an agreement constitutes a structured settlement includes the issue of whether a third party is involved. We conclude that the Fund's arguments to the trial court were sufficiently specific to preserve the dispositive issue we address on appeal.

4. In *Eakin,* there was no question that the claimant was to receive more than $100,000 pursuant to a periodic payments agreement. Instead, the issue on appeal was whether that agreement rendered the claimant ineligible for access to the Fund in light of its provision that the claimant would reimburse the health care provider in full if he was successful in a separate lawsuit against Ford Motor Company. We held that such a "conditional" agreement was insufficient to access the Fund. *Eakin,* 567 N.E.2d at 150.

paid the maximum $100,000 ... before access may be had to the fund." *Mitchell–Leech,* 557 N.E.2d at 1063 (Garrard, J., dissenting). The statutory scheme attempts to balance the escalating costs of malpractice insurance with the realization that some incidents of malpractice produce devastating results, including astronomical medical bills. To effectuate this scheme, the legislature apportioned some of the financial responsibility to the health care providers and some of the financial responsibility to the Fund. *The health care providers must satisfy their obligation before access to the Fund is allowed.*

*Eakin,* 567 N.E.2d at 149–50 (some citations omitted, emphasis added). In short, given the statutory scheme, as a whole, it is clear that the legislature intended that a claimant pursuing damages under the Act would obtain the first $100,000 in damages from a health care provider before accessing additional damages from the Fund.

While it is also clear that Section 4(b) permits health care providers and their insurers to save thousands of dollars by purchasing periodic payments agreements in lieu of lump-sum payments, nothing in the rationale and policy underlying the Act indicates that the legislature intended that a health care provider could satisfy its obligation under the statute by making two direct payments to the claimant totaling $75,001. While the Act does not expressly require that the periodic payments eventually pay out $100,000 over time,[5] it would produce an absurd result if the Act were construed to permit a health care provider to satisfy its statutory obligation by paying only $75,001 directly to the claimant. *See Livingston v. Fast Cash USA, Inc.,* 753 N.E.2d 572, 576 (Ind.2001) (declining to

adopt appellee's interpretation of statute where it was "inconsistent with the purposes and policies of the [statutory scheme] and create[d] an absurd result which the legislature could not have intended[.]").

We hold that the agreement between WBH and the Estate does not satisfy the requirements under Section 4(b), namely, that a health care provider spend more than $75,000 on the sum of an immediate payment (or present payment) to the claimant and the cost of a periodic payments agreement. As such, the Estate is not entitled to access the Fund. The trial court erred when it denied the Fund's motion to dismiss the Estate's petition for excess damages.

Reversed.

KIRSCH, C.J., and VAIDIK, J., concur.

---

**5.** The Act does state that the total amount of the payments may exceed $100,000. *See* Ind. Code § 34–18–14–1.